No. 2026-1338

# In the United States Court of Appeals for the Federal Circuit

BAYERISCHE MOTOREN WERKE AKTIENGESELLSCHAFT,

*Plaintiff-Appellee,*

v.

ONESTA IP, LLC,

*Defendant-Appellant.*

On Appeal from the United States District Court for the
Western District of Texas (No. 6:25-cv-00581-ADA)
(The Hon. Alan D. Albright)

## APPELLANT ONESTA IP, LLC'S RENEWED EMERGENCY MOTION TO STAY THE DISTRICT COURT'S INJUNCTION ORDER PENDING THIS COURT'S RULING ON APPELLANT'S RULE 8 MOTION

### ACTION REQUESTED IMMEDIATELY

JASON D. CASSADY
AUSTIN CURRY
DANIEL R. PEARSON
AISHA MAHMOOD HALEY
CALDWELL CASSADY CURRY PC
2121 N. PEARL ST., STE. 1200
DALLAS, TX 75201

*Counsel for Defendant-Appellant
Onesta IP, LLC*

JANUARY 16, 2026

FORM 9. Certificate of Interest

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

**Case Number**  2026-1338

**Short Case Caption**  BMW v. Onesta IP, LLC

**Filing Party/Entity**  Onesta IP, LLC

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 01/16/2026

Signature:  /s/ Jason D. Cassady

Name:  Jason D. Cassady

FORM 9. Certificate of Interest

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.  ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.  ☑ None/Not Applicable |
| Onesta IP, LLC | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐   Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐   None/Not Applicable          ☐   Additional pages attached

| | | |
|---|---|---|
| Mark D. Siegmund (Cherry Johnson Siegmund James PLLC) | Lionel M. Lavenue (Finnegan, Henderson, Farabow, Garrett & Dunner, LLP) | J. Derek McCorquindale (Finnegan, Henderson, Farabow, Garrett & Dunner, LLP) |
| Matthew C. Berntsen (Finnegan, Henderson, Farabow, Garrett & Dunner, LLP) | Joseph M. Myles (Finnegan, Henderson, Farabow, Garrett & Dunner, LLP) | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐   Yes (file separate notice; see below)    ☑   No    ☐   N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑   None/Not Applicable          ☐   Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# <u>TABLE OF CONTENTS</u>

I.   The district court's oral order had immediate effect and requires
     immediate action.................................................................................5

II.  There are no defects in this Court's jurisdiction. ...............................7

III. Each factor supports granting the temporary stay. ...........................11

     A.   Onesta has a strong likelihood of success...................................12

     B.   Onesta will be irreparably injured absent a stay. ......................14

     C.   A stay will not substantially injure BMW..................................15

     D.   The public interest supports a stay. ..........................................17

IV.  Conclusion ......................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*ABC Corp. I v. P'ship & Unincorporated Associations Identified*
  *on Schedule "A"*
  51 F.4th 1365 (Fed. Cir. 2022) ................................................................8

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*
  694 F.3d 1312 (Fed. Cir. 2012) .............................................................17

*Aevoe Corp. v. AE Tech Co.,*
  727 F.3d 1375 (Fed. Cir. 2013) ...............................................................5

*Astellas US v. Hospira, Inc.*
  No. 2022-1878 (Fed. Cir. Sept. 27, 2022) .............................................12

*Boerschig v. Trans-Pecos Pipeline, L.L.C.*
  872 F.3d 701 (5th Cir. 2017) ......................................................... 10, 15

*Carl Zeiss Meditec, Inc. v. Topcon Med. Sys., Inc.*
  No. 2021-1839, 2022 WL 1530491 (Fed. Cir. May 16, 2022) ...............8

*Carson v. Am. Brands, Inc.*
  450 U.S. 79  (1981) ...................................................................................9

*Compagnie des Bauxites de Guinea v. Ins. Co. of N. Am.*
  651 F.2d 877 (3d Cir. 1981), *aff'd sub nom.*
  *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*
  456 U.S. 694 (1982) ...............................................................................13

*Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*
  424 F.3d 1293 (Fed. Cir. 2005) ...................................................... 7, 8, 9

*Ganpat v. E. Pac. Shipping PTE, Ltd.*
  66 F.4th 578 (5th Cir. 2023) ...................................................................13

*Hilton v. Braunskill*
  481 U.S. 770 (1987) ...............................................................................11

*Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan
Gas Bumi Negara*
335 F.3d 357 (5th Cir. 2003) .......................................................... 18, 19

*Kiobel v. Royal Dutch Petroleum Co.*
569 U.S. 108 (2013) ..............................................................................15

*Macom Tech. Sols. Holdings, Inc. v. Infineon Techs. AG*
881 F.3d 1323 (Fed. Cir. 2018) .........................................................5, 8

*Microsoft Corp. v. AT & T Corp.*
550 U.S. 437(2007) ...............................................................................15

*Mitchco Int'l, Inc. v. United States*
26 F.4th 1373 (Fed. Cir. 2022) ..................................................... 10, 15

*MWK Recruiting Inc. v. Jowers*
833 F. App'x 560 (5th Cir. 2020) .........................................................14

*New Hampshire v. Maine*
532 U.S. 742 (2001) ................................................................................7

*Pegram v. Herdrich*
530 U.S. 211(2000) .................................................................................7

*Ueckert v. Guerra*
38 F.4th 446 (5th Cir. 2022) ...............................................................5, 6

*Vanda Pharms. Inc. v. Teva Pharms. USA Inc.*
No. 2023-1247 (Fed. Cir. Dec. 16, 2022) ............................................12

*Woodard v. Sage Prods., Inc.*
818 F.2d 841(Fed. Cir. 1987) ................................................................9

**Statutes**

28 U.S.C. § 1292(a)(1) .................................................................... 4, 8, 9

28 U.S.C. § 1292(a)(2) .............................................................................4

**Rules**

Fed. Cir. R. 8(b) ...................................................................................1

Fed. R. Civ. P. 65 ............................................................................ 8, 12

Fed. R. Civ. P. 65(a) .............................................................................8

Fed. R. Civ. P. 65(c) ............................................................................1

Fed. R. Civ. P. 65(d) .............................................................................8

### APPELLANT'S RENEWED EMERGENCY MOTION TO STAY THE DISTRICT COURT'S INJUNCTION ORDER PENDING THIS COURT'S RULING ON RULE 8 MOTION

Onesta renews its motion for a temporary stay in this Court following written clarification from the district court.[1] To recap, the district court orally issued an anti-suit injunction that rendered CJEU precedent governing the enjoined suit a nullity, taking away a German court's proper *in personam* jurisdiction over a German citizen. Onesta moved for a temporary stay of the anti-suit injunction order while the parties briefed a Rule 8 motion to stay the district court's injunction ruling while this appeal was pending. ECF No. 2. In response, BMW represented that "Rule 65(c) is clear that the injunction against Onesta has yet to take effect" and that "there is simply no injunction yet to appeal and jurisdiction is lacking." ECF No. 7 at 6.

This Court then denied Onesta's motion, citing BMW's statements "that the injunction has yet to take effect' and that the District Court has not 'enter[ed] its final judgment on injunctive relief." Order on Motion, ECF No. 12 at 2. This Court also cited the district court's

---

1 Onesta reached out to counsel for BMW and notified it of this motion per Fed. Cir. R. 8(b). BMW represented that it opposes this motion and plans to file an opposition brief.

statement at the hearing that it was "going to grant [appellee's] motion

for a preliminary injunction' and that a 'written order' is forthcoming."

*Id.* at 1.

Given BMW's representations that the injunction had yet to take

effect, Onesta was puzzled to receive an email from BMW right after

this Court denied the stay motion demanding, again, immediate

compliance with the injunction under threat of a motion for contempt.

Onesta thus sought clarification via a status conference request to the

district court.

The district court declined to set a status conference but confirmed

via email that the orally issued injunction had immediate effect.  Ex. A.

The Court clarified that its ***injunction took effect immediately***

***without written order***:

> As Judge Albright stated on the record, the oral
> order granting BMW's motion for anti-suit
> injunction went into immediate effect at the time
> it was orally granted.  The Court's intention was
> not for the injunction to take effect after release of
> the written order.  The parties should act in
> accordance with the Court's oral ruling as
> expeditiously as possible.

Ex. A.  Upon receiving this guidance from the district court, Onesta

requested that the district court enter an order on the docket before

Onesta renewed its motion for stay before this Court—particularly to correct BMW's misstatement to this Court that the injunction had yet to take effect.  Ex. B at p. 2.

The district court issued such an order.  It confirmed its ruling in a short "Order Clarifying the Court's Oral Ruling on BMW's Motion for Anti-Suit Injunction" on the docket, explaining that, although the injunction "took immediate effect," "the Court intended to provide Onesta with a reasonable 'window' to request a stay from the Federal Circuit prior to termination."  Ex. C.

Thus, the district court has removed any ambiguity: its oral order requiring immediate compliance is an injunction order.  It is not *going to* grant relief in the future; in its view, it already has.  The forthcoming "written order" will simply "memoraliz[e] the Court's reasoning."  *Id.* This appeal is appropriate; the filing of this motion was contemplated by the district court itself; and the instant temporary stay motion remains ripe.  Even further, BMW has already moved for enforcement of the injunction and an order to show cause why Onesta should not be held in contempt.  Ex. D.

Given Onesta's belief regarding likelihood of success on appeal, Onesta thus requests temporary relief from the district court's injunction order while the parties brief Onesta's forthcoming motion to stay the order pending this appeal.  Onesta needs this temporary relief in view of BMW's attempt to enforce the injunction prior to (1) Onesta having the opportunity to exercise its rights under 28 U.S.C. § 1292(a)(1), and (2) the district court memorializing its reasons for granting the injunction.  In compliance with the immediacy of the injunction, Onesta represented to the district court that, if this renewed motion is denied, it will immediately terminate the German cases.  Ex. B at p. 2 (Onesta requesting that the district court enter "something in writing from the Court so that [Onesta] can re-raise its request for an emergency temporary stay with the Federal Circuit.  To the extent that [a] temporary stay is denied, Onesta will terminate the German actions when the stay is denied.").  Onesta respectfully submits that a decision with such important international implications should not be effectively unreviewable and respectfully requests that the Court grant this motion so that the parties have a fulsome opportunity to brief the Rule

8 factors, including likelihood of success on appeal, once the district court memorializes its reasoning.

## I.  The district court's oral order had immediate effect and requires immediate action.

The oral form of the Court's injunction order is of no moment for this Court's jurisdiction or for the necessity of immediate relief: "the district court regarded its oral ruling as final." *Ueckert v. Guerra*, 38 F.4th 446, 451 (5th Cir. 2022).[2] "The test for finality is whether the district court intended that its order be 'effectively immediately.'" *Id.* At this point, there can be no doubt that Judge Albright intended immediate effect. *See* Ex. A ("As Judge Albright stated on the record, the oral order granting BMW's motion for anti-suit injunction went into ***immediate effect*** at the time it was orally granted. ***The Court's intention was not for the injunction to take effect after release of the written order***." (emphasis added)); Ex. C ("To make the intention of the Court clear, the Court's oral order granting BMW's Motion for

---

[2] Fifth Circuit law applies here. *See Macom Tech. Sols. Holdings, Inc. v. Infineon Techs. AG*, 881 F.3d 1323, 1328 (Fed. Cir. 2018) ("Because the grant, denial, or modification of a preliminary injunction is not unique to patent law, we apply regional circuit law when reviewing and interpreting such decisions." (citing *Aevoe Corp. v. AE Tech Co.*, 727 F.3d 1375, 1381 (Fed. Cir. 2013))).

Anti-Suit Injunction and ordering Onesta to terminate its German lawsuits asserting United States patents took immediate effect.").[3] Thus, the district court's order from the bench is immediately appealable. *See also Ueckert*, 38 F.4th at 451 ("we have repeatedly affirmed that bench ruling can be final provided the district court intends that it be effective immediately").

Indeed, even BMW continues to insist below that the order has immediate effect and has purported to open contempt proceedings. *See* Ex. B (email on January 15 from BMW counsel stating "BMW's position is that the record is clear – that this Court required the dismissal of the German lawsuits on the US patents 'now' and 'immediately.' Onesta has not complied (or attempted to do so)."); *id.* ("BMW does plan to file a motion later today – for enforcement of the anti-lawsuit injunction and

---

[3] Onesta asked the district court to reflect its email correspondence in a text order on the docket, for the avoidance of any doubt that the district court issued the injunction, given BMW's representations that the injunction was not yet in force before this Court. Ex. B. at p. 1–2. The district court did so. Ex. C. Bench rulings with immediate effect are just as appealable as written ones, *Ueckert*, 38 F.4th at 451, but the Court's oral order has nevertheless been reduced to writing as well.

seeking a show cause for Onesta's non-compliance with the Court's

ruling."); Ex. D (BMW's motion for show cause order and contempt).[4]

## II.    There are no defects in this Court's jurisdiction.

In any event, BMW's identification of procedural defects in the

district court's order, *see* ECF No. 7 at 6 (stating that the district court's

order lacked a bond requirement), do not call into question this Court's

jurisdiction.  *See Cross Med. Prods., Inc. v. Medtronic Sofamor Danek,*

*Inc.*, 424 F.3d 1293, 1301 (Fed. Cir. 2005) (confirming that this Court

has jurisdiction where "the district court entered an order expressly

enjoining Medtronic").  The district court has confirmed that it has

issued an oral order expressly enjoining Onesta and requiring

immediate dismissal of the German cases.  Exs. A, C.  This Court "has

---

[4] BMW's pattern of contrary statements appears to violate the basic principle of judicial estoppel.  BMW cannot oppose Onesta's motion because an injunction purportedly does not exist; have this Court rely on that representation; and then urge the district court to act ask if the injunction had been in force all along by moving for contempt. *See, e.g.*, *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) ("judicial estoppel[] 'generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." (quoting *Pegram v. Herdrich*, 530 U.S. 211, 227 n.8 (2000))).  The injunction request here seeks fundamentally equitable relief, and BMW's unclean hands in this regard should be weighed in the consideration of whether Onesta is entitled to the relief it seeks from this Court.

jurisdiction over appeals from interlocutory orders 'granting . . . injunctions.'" *Cross Medical*, 424 F.3d at 1300 (quoting 28 U.S.C. § 1292(a)(1)). It easily has jurisdiction over the district court's oral ruling granting an injunction here.

Instead, an order's failure to comply with the requirements of Rule 65 warrants vacatur of the injunction, which is included among the relief Onesta intends to seek in this appeal and brief on the merits. *See, e.g.*, *Carl Zeiss Meditec, Inc. v. Topcon Med. Sys., Inc.*, No. 2021-1839, 2022 WL 1530491, at *3 (Fed. Cir. May 16, 2022) (vacating and remanding injunction that did not comply with Rule 65(d)); *Macom Tech. Sols.*, 881 F.3d at 1331 ("We vacate the first sentence because it lacks the specificity that Rule 65(d) requires."); *ABC Corp. I v. P'ship & Unincorporated Associations Identified on Schedule "A"*, 51 F.4th 1365, 1377–76 (Fed. Cir. 2022) (finding no "impediment to [this Court's] jurisdiction" in reviewing and vacating injunction that did not meet "Rule 65(a)'s notice requirement"). BMW's identification of defects in the injunction order only goes to show that Onesta has a likelihood of success on the merits to get the injunction dissolved in the ultimate appeal.

Even if, however, this Court viewed the district court's ruling as failing to be an explicit grant of an injunction, this Court nevertheless has jurisdiction over orders that have the practical effect of granting or denying injunctions. *Cross Medical*, 424 F.3d at 1300–01 (collecting cases); *see also Carson v. Am. Brands, Inc.*, 450 U.S. 79, 84 (1981). Not only does the district court's ruling have such an effect, but it also has serious, irreparable consequences warranting interlocutory appeal, independently qualifying the order for immediate appeal. *See Woodard v. Sage Prods., Inc.*, 818 F.2d 841, 842 (Fed. Cir. 1987) (en banc) ("an interlocutory order that, in effect, denies an injunction is appealable under section 1292(a)(1) only if such order causes serious, if not irreparable, consequence and can be effectually challenged only by immediate appeal").

If a temporary freeze of the district court's order is not granted, Onesta will be forced to dismiss the German cases, effectively permitting the district court to nullify the CJEU's landmark *Electrolux* decision—one that confirmed Germany's general jurisdiction over its citizens, which is fully consistent with American notions of

jurisdiction—all before this Court can consider the merits of this appeal.

An issue of international importance will have been decided from the bench by the district court without the Federal Circuit having an opportunity to speak:  The issue Onesta would be seeking to brief to this Court—whether Onesta should be required to dismiss the German cases—will have been finally decided as the case will already be dismissed, and ***this appeal could well become moot and lack Article III case or controversy***.  If Onesta is required to immediately dismiss the Munich cases, the event sought to be enjoined will have already taken place, potentially causing mootness.  *See Boerschig v. Trans-Pecos Pipeline, L.L.C.*, 872 F.3d 701, 704 (5th Cir. 2017) ("A request for injunctive relief generally becomes moot when the event sought to be enjoined takes place."); *Mitchco Int'l, Inc. v. United States*, 26 F.4th 1373, 1378 (Fed. Cir. 2022) ("There is no question that the injunctive relief Mitchco seeks is moot insofar as Mitchco seeks an order enjoining KOVR's performance of the contract, since the Army has already terminated KOVR's contract.").  And this Court cannot restore the status quo, as it has no power to extraterritorially order the German

courts to restore a dismissed case.  Those cases themselves would be
irretrievable.

The district court's ruling, with serious consequences for
international law and comity, should not escape review because of the
*form* of the district court's immediately effective oral order.  But absent
a freeze of the order, the cases will be dismissed, and the Onesta will
suffer irreparable damage, and appellate review may become frustrated
and, even, impossible.

## III.    Each factor supports granting the temporary stay.

As before, Onesta will address each factor this Court considers in
granting a stay motion at a high level.  The factors regulating the
issuance of a stay are: "(1) whether the stay applicant has made a
strong showing that he is likely to succeed on the merits; (2) whether
the applicant will be irreparably injured absent a stay; (3) whether
issuance of the stay will substantially injure the other parties
interested in the proceeding; and (4) where the public interest lies."
*Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).  Notably, however, this
Court has issued temporary stays without movants marching through
each stay factor in the past.  *See, e.g.*, Order, *Astellas US v. Hospira,*

11

*Inc.*, No. 2022-1878 (Fed. Cir. Sept. 27, 2022), ECF No. 23 (granting "motion for temporary injunction" of product launch "pending consideration of" a party's "Rule 8 motion and to expedite oral argument"); Order on Motion, *Vanda Pharms. Inc. v. Teva Pharms. USA Inc.*, No. 2023-1247 (Fed. Cir. Dec. 16, 2022), ECF No. 6 (granting motion for temporary injunction while the "court considers ECF No. 2," Vanda's motion "to enjoin, pending appeal, the appellees from commercial marketing and sale of their generic tasimelteon products").

## A.   <u>Onesta has a strong likelihood of success.</u>

*First*, Onesta has a strong likelihood of success.  As a threshold matter, the district court's injunction did not comply with Rule 65 per BMW's own arguments, ECF No. 7 at 6–9, warranting vacatur.

But the district court also fails to meet the requirements for granting an antisuit injunction in the Fifth Circuit.  The court's exceptionally broad injunction effectively overrides a well-reasoned decision of the CJEU that Onesta properly followed in filing the Munich cases.  Fifth Circuit law confirms that an ASI is inappropriate unless a foreign court threatens to interfere with the U.S. court's jurisdiction. *See Ganpat v. E. Pac. Shipping PTE, Ltd.*, 66 F.4th 578, 582–83 (5th

Cir. 2023).  Onesta, however, stipulated that it would not seek to enjoin

the declaratory judgment case with an anti-antisuit injunction, and

counsel for BMW agreed that nothing in the German cases would

prevent the district court from moving forward in the U.S. action.  Ex. G

(Hearing Transcript) 56:20–57:2 ("So as far as whether or not there's

anything in Germany that would prevent you, the answer is no.  There's

nothing that would happen in Germany that would prevent you from

going forward other than the inconsistency that would result from what

Germany is doing applying U.S. law and what you would be doing

exactly the same thing.").  In situations where the foreign suit does not

interfere with the domestic one, the Supreme Court has counseled that

the proper course would be to maintain parallel proceedings.  *See*

*Compagnie des Bauxites de Guinea v. Ins. Co. of N. Am.*, 651 F.2d 877,

887 (3d Cir. 1981), *aff'd sub nom. Ins. Corp. of Ireland v. Compagnie des*

*Bauxites de Guinee*, 456 U.S. 694 (1982) (relied on below by BMW in its

papers).

Further, Onesta has a strong likelihood of success on appeal

because the district court did not follow the proper legal test under

Fifth Circuit law in granting the injunction, instead substituting its

own judgment for whether the CJEU **should** have decided *Electrolux*
differently. *See MWK Recruiting Inc. v. Jowers*, 833 F. App'x 560, 564–
65 (5th Cir. 2020) (vacating anti-suit injunction for being decided under
an incorrect legal test that improperly "lower[ed] the bar for antisuit
injunctions, rendering them commonplace."); Ex. G (Hearing
Transcript) 45:25–46:5 ("So all I care about is whether or not I think a
German court or any European court or any court other than a United
States district court should be handling United States patent litigation.
That is pretty much the beginning and ending of my analysis here.").

## B.    <u>Onesta will be irreparably injured absent a stay.</u>

*Second*, Onesta is irreparably harmed absent temporary and
interim relief.  The district court's order requires Onesta to immediately
terminate the German action, effectively preventing the Munich court
from ever addressing BMW's objection to its own jurisdiction.  *See* Exs.
E, F (raising boilerplate objections to jurisdiction).  Forced dismissal
would be a drastic result before even this Court could speak on
important international law issues.

Again, the issue Onesta would be seeking to brief to this Court—
whether Onesta should be required to dismiss the German cases—will

have been finally decided as the case will already be dismissed, and

***this appeal could well become moot and lack Article III case or***

***controversy***.   This Court cannot retrieve the Munich cases once they

are dismissed; it cannot order a German court to restore them.  Indeed,

there is a "presumption that United States law governs domestically

but does not rule the world." *Kiobel v. Royal Dutch Petroleum Co.*, 569

U.S. 108, 115 (2013) (citing *Microsoft Corp. v. AT & T Corp.*, 550 U.S.

437, 454 (2007)).  And when an event sought to be enjoined has already

taken place—here, dismissal—mootness is a key issue.  *See Boerschig*,

872 F.3d at 704; *Mitchco*, 26 F.4th at 1378 (Fed. Cir. 2022).  Because

this Court cannot restore the status quo once the cases are dismissed,

as it has no power to extraterritorially order the German courts to

restore a dismissed case, Onesta will be irreparably injured absent a

stay.

## C.    A stay will not substantially injure BMW.

*Third*, BMW would not be harmed from interim relief from the

district court's injunction order.  BMW would merely be forced to follow

the Supreme Court's guidance and conduct litigation in parallel.  *See*

*Compagnie des Bauxites* 651 F.2d at 887.  Naturally, there would have

been no risk that BMW might have to conduct litigation in parallel if it had not filed duplicative litigation in Texas. BMW's next deadline in the Munich actions is at the end of February, and BMW could seek relief from the Munich court regarding the briefing schedule.

To Onesta's knowledge, while BMW has noted them, BMW has not fully briefed its jurisdictional objections to the Munich court or otherwise informed the German tribunal about its efforts in the U.S. courts. BMW did ask the German tribunal for additional time and received relief already, Exs. E, F, which resulted in the current deadlines in February and March.

To the extent the extension granted by the German tribunal is no longer sufficient, BMW can raise its concerns to that court. If BMW has been focused on halting the German proceedings, as opposed to responding to them, and needs more time from the German tribunal for that reason, Onesta sees no reason that BMW could not make that request directly to the German tribunal with such an explanation. It certainly did not explain to the German court that its extension request was necessitated by planned case filing and motion practice in the United States in either extension request. Exs. E, F. Injunctive relief,

and, particularly, an antisuit injunction, which should consider
international comity, cannot be justified simply because BMW does not
want to ask the German tribunal for an extension of a German
deadline.  In any event, as even BMW appeared to recognize before this
Court, ECF No. 7 at 14, litigation costs are not irreparable harms, *see
ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312,
1337 (Fed. Cir. 2012) ("Litigation costs are . . . not an irreparable harm
in the injunction calculus.").

### D.    <u>The public interest supports a stay.</u>

*Finally*, the public interest supports granting temporary relief.
The CJEU is the highest court in the EU and takes questions referred
to it by other appeal courts.  Its Grand Chamber, composed of 15 judges
and the President, rendered a carefully reasoned decision that balanced
international comity concerns and state sovereignty issues in
*Electrolux*.  Nor does the *Electrolux* decision offend American notions of
justice—it merely concluded that EU courts have general jurisdiction
over their citizens and that patent infringement actions are not an
exception to that rule.  The district court here rendered that decision a
nullity as to U.S. patents with one quick oral order, and without interim

relief, the German court will be deprived of an opportunity to pass on its own jurisdiction over its citizens after *Electrolux*. Where here, the district court's ruling cancels an important ruling of the CJEU and BMW's injunction wades into "public international issues"—comity is a key consideration in the Fifth Circuit. *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 371–72 (5th Cir. 2003). The public is best served by a stay, which will afford both the German court and this Court to reach important questions of law and comity.

Indeed, this Court may be deprived of an opportunity to speak on the merits of the lower court's ruling and this international issue because, without a stay, this appeal may become moot, and the appeal may not meet the requirements of Article III. If that happens, Onesta's objections to the district court's order will never be heard. The public interest is certainly not served by unreviewable injunctions of international importance.

To the extent there is any question about the import of *Electrolux*, the Munich court should be permitted to reach the question in the first instance by ruling on the jurisdictional objections BMW mentioned in

18

passing to the Munich court, Exs E, F, and without relief, Onesta's Munich case would be dismissed, preventing that from ever happening and creating an international incident. *See Karaha Bodas*, 335 F.3d at 373 ("an injunction here is likely to have the practical effect of showing a lack of mutual respect for the judicial proceedings of other sovereign nations . . . .").

The decision of European courts to hold their citizens accountable for torts performed abroad, including U.S. patent infringement, does not undercut the interest of the U.S. public. The heart of *Electrolux* is that it respects comity and the territorial jurisdiction of the patent-issuing nation by limiting invalidity findings to *inter partes* effect while still allowing efficient resolution of patent disputes. A Munich court can bind a German company with all legal instruments enforcing that decision staying within Germany. Yet BMW, a foreign defendant, has haled itself into U.S. court to fashion its own exception from *Electrolux*, carving out U.S. patents for disparate and disadvantaged treatment in the EU. This is particularly problematic, as the U.S. is a signatory of the TRIPS agreement, which requires that its members treat other signatory's patents "no less favo[rably]" than their own. Agreement on

Trade-Related Aspects of Intellectual Property Rights, pt. 1, art. 3.1,

Apr. 15, 1994, Marrakesh Agreement Establishing the World Trade

Organization, Annex 1C, 1869 U.N.T.S. 299 ("TRIPS").  With the

district court's oral order, U.S. patents will be disadvantaged over all

other countries' patents that are currently enforceable in EU courts,

undercutting U.S. policy and ratification of TRIPs.  That cannot serve

the public interest.

The public interest weighs in favor of staying the district court's

sweeping order and permitting careful consideration both by this Court

and by the courts in Munich.

## IV.    Conclusion

For the foregoing reasons, Onesta again respectfully requests the

Court enter a temporary stay while Onesta's forthcoming motion to stay

the district court's injunction order pending this appeal is briefed and

decided.

Given the developments since Onesta's initial filing, Onesta

requests that it be permitted to file its motion for stay within seven (7)

days of the district court issuing its forthcoming written order, which

will "memorializ[e] the [district c]ourt's reasoning," Ex. C, and inform

the stay analysis, including the likelihood of success on the merits

factor.

Dated: January 16, 2026   Respectfully submitted,

By: */s/ Jason D. Cassady*

Jason D. Cassady
Austin Curry
Daniel R. Pearson
Aisha Mahmood Haley
**CALDWELL CASSADY CURRY PC**
2121 N. Pearl St., Ste. 1200
Dallas, TX 75201

*Attorneys for Appellant*
*Onesta IP, LLC*

**FORM 19. Certificate of Compliance with Type-Volume Limitations**

Form 19
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS</u>

**Case Number:** <u>2026-1338</u>

**Short Case Caption:** <u>BMW v. Onesta IP, LLC</u>

> **Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

- [✓] the filing has been prepared using a proportionally-spaced typeface and includes <u>3,777</u> words.

- [ ] the filing has been prepared using a monospaced typeface and includes _____ lines of text.

- [ ] the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: <u>01/16/2026</u>      Signature: <u>/s/ Jason D. Cassady</u>

Name: <u>Jason D. Cassady</u>

<span style="color:red">Save for Filing</span>

## **CERTIFICATE OF SERVICE**

I hereby certify that, on January 16, 2026, all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system.

By: */s/ Jason D. Cassady*
Jason D. Cassady

*Exhibit A*

 Outlook

---

**Re: Response from BMW - Emergency Plea for a Status Conference in BMW v Onesta**

---

**From** Benjamin Budner <Benjamin_Budner@txwd.uscourts.gov>

**Date** Thu 1/15/2026 11:45

**To** Lavenue, Lionel <lionel.lavenue@finnegan.com>; Jason Cassady <jcassady@caldwellcc.com>; Jennifer Clark <Jennifer_Clark@txwd.uscourts.gov>; Anna Schmidt <Anna_Schmidt@txwd.uscourts.gov>; Michael Dinnella <Michael_Dinnella@txwd.uscourts.gov>; Kristie Davis <Kristie_Davis@txwd.uscourts.gov>

**Cc** Myles, Joseph <Joseph.Myles@finnegan.com>; McCorquindale, J. Derek <Derek.McCorquindale@finnegan.com>; Berntsen, Matthew <Matthew.Berntsen@finnegan.com>; Mark Siegmund <msiegmund@cjsjlaw.com>; Austin Curry <acurry@caldwellcc.com>; Aisha Haley <ahaley@caldwellcc.com>; Daniel Pearson <dpearson@caldwellcc.com>

---

> **Warning: Unusual link**
> This message contains an unusual link, which may lead to a malicious site. Confirm the message is safe before clicking any links.

Counselors,

As Judge Albright stated on the record, the oral order granting BMW's motion for anti-suit injunction went into immediate effect at the time it was orally granted. The Court's intention was **not** for the injunction to take effect after release of the written order. The parties should act in accordance with the Court's oral ruling as expeditiously as possible.

Please let me know if you have remaining questions.



**Ben Budner**
*Law Clerk to the Honorable Alan D Albright*
United States District Court
Western District of Texas
Benjamin_Budner@txwd.uscourts.gov

---

**From:** Lavenue, Lionel <lionel.lavenue@finnegan.com>
**Sent:** Thursday, January 15, 2026 11:38 AM
**To:** Jason Cassady <jcassady@caldwellcc.com>; Benjamin Budner <Benjamin_Budner@txwd.uscourts.gov>; Jennifer Clark <Jennifer_Clark@txwd.uscourts.gov>; Anna Schmidt <Anna_Schmidt@txwd.uscourts.gov>; Michael Dinnella <Michael_Dinnella@txwd.uscourts.gov>; Kristie Davis <Kristie_Davis@txwd.uscourts.gov>
**Cc:** Myles, Joseph <Joseph.Myles@finnegan.com>; McCorquindale, J. Derek <Derek.McCorquindale@finnegan.com>; Berntsen, Matthew <Matthew.Berntsen@finnegan.com>; Mark Siegmund <msiegmund@cjsjlaw.com>; Austin Curry <acurry@caldwellcc.com>; Aisha Haley

<ahaley@caldwellcc.com>; Daniel Pearson <dpearson@caldwellcc.com>
**Subject:** Response from BMW - Emergency Plea for a Status Conference in BMW v Onesta

 **CAUTION - EXTERNAL:**

Dear Law Clerks and Judge Albright,

Onesta did not consult with BMW before submitting its email to the Court.

Nonetheless, the Court's Order was clear, and Onesta has not complied (2 days have passed, and the German lawsuits are not dismissed).

As for Onesta's motion for emergency stay, it was denied, in that Onesta filed its appeal prematurely under Rule 65, before the injunction was subject to appeal.

BMW's position is that the record is clear – that this Court required the dismissal of the German lawsuits on the US patents "now" and "immediately."  Onesta has not complied (or attempted to do so).

Regards,

Lionel

**Lionel M. Lavenue** | Bio
Attorney at Law
Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
1875 Explorer Street, Suite 800, Reston, VA 20190-6023
+1 571 203 2750 | fax +1 202 408 4400 | lionel.lavenue@finnegan.com | www.finnegan.com | Linked in profile

## FINNEGAN

**From:** Jason Cassady <jcassady@caldwellcc.com>
**Sent:** Thursday, January 15, 2026 12:30 PM
**To:** Benjamin_Budner@txwd.uscourts.gov; Jennifer_Clark@txwd.uscourts.gov;
Anna_Schmidt@txwd.uscourts.gov; Michael_Dinnella@txwd.uscourts.gov; Kristie_Davis@txwd.uscourts.gov
**Cc:** Lavenue, Lionel <lionel.lavenue@finnegan.com>; Myles, Joseph <Joseph.Myles@finnegan.com>;
McCorquindale, J. Derek <Derek.McCorquindale@finnegan.com>; Berntsen, Matthew
<Matthew.Berntsen@finnegan.com>; Mark Siegmund <msiegmund@cjsjlaw.com>; Austin Curry
<acurry@caldwellcc.com>; Aisha Haley <ahaley@caldwellcc.com>; Daniel Pearson <dpearson@caldwellcc.com>
**Subject:** Emergency Plea for a Status Conference in BMW v Onesta

Dear Law Clerks and Judge Albright,

Onesta writes to request an emergency status conference on BMW's injunction request.  Specifically, at the hearing, it was our understanding that although the Court permitted a grace period for Onesta to comply with its order, the order was immediate.  Indeed, even the day of the hearing, BMW emailed Onesta to demand immediate compliance with your oral injunction ruling.

Onesta thus moved quickly to file papers at the Federal Circuit regarding the injunction and seeking a stay.  However, in that briefing, BMW told the Federal Circuit that your "injunction against Onesta has

yet to take effect" and that "there is simply no injunction yet," apparently because in BMW's view, the oral order did not have a bond requirement and that your written order was forthcoming.

The Federal Circuit then relied on BMW's statements to deny relief and appeared to interpret your statements at the hearing to mean that the court would grant the injunction in the future, via the written order.

Onesta is trying to comply with this Court's order but is getting mixed signals about whether it is in place or not from both BMW and the Federal Circuit.  And to preserve our client's rights and ensure we do not take away from our client's ability to appeal the ruling, we are trying to avoid taking action that will later be interpreted as voluntarily dismissing the German cases without a Court Order.  Onesta and its counsel have tremendous respect for this Court and are trying to comply with the Court's order and balance our client's rights, but Onesta needs some quick guidance from the Court. Based on everything that has happened since the hearing, Onesta requests an emergency status conference with lead and local counsel and chambers to discuss these issues and better understand what the Court's understanding of the status is with respect to the injunction.

Best Regards,

Jason D. Cassady /// Caldwell Cassady & Curry
2121 N. Pearl Street, Suite 1200, Dallas, TX 75201
Direct Line: 214.888.4841
Main Line Telephone:214.888.4848
Fax Line: 214.888.4849
jcassady@caldwellcc.com
www.caldwellcc.com

NOTICE OF CONFIDENTIALITY:
The information contained in this e-mail is subject to the ATTORNEY-CLIENT and ATTORNEY WORK PRODUCT PRIVILEGE and is CONFIDENTIAL.  It is intended only for the recipient(s) designated above.  Any dissemination, distribution, copying, use or reliance upon the information contained in and transmitted with this e-mail by or to anyone other than the recipient(s) designated by the sender is unauthorized and prohibited.  If you have received this e-mail in error, please notify the sender by reply immediately.  Any e-mail erroneously transmitted to you should be immediately destroyed.

This e-mail message is intended only for individual(s) to whom it is addressed and may contain information that is privileged, confidential, proprietary, or otherwise exempt from disclosure under applicable law. If you believe you have received this message in error, please advise the sender by return e-mail and delete it from your mailbox. Thank you.

This e-mail message is intended only for individual(s) to whom it is addressed and may contain information that is privileged, confidential, proprietary, or otherwise exempt from disclosure under applicable law. If you believe you have received this message in error, please advise the sender by return e-mail and delete it from your mailbox. Thank you.
**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

*Exhibit B*

 Outlook

---

**Further Response from BMW - Emergency Plea for a Status Conference in BMW v Onesta**

**From** Lavenue, Lionel <lionel.lavenue@finnegan.com>

**Date** Thu 1/15/2026 12:23

**To** Jason Cassady <jcassady@caldwellcc.com>; Benjamin Budner <Benjamin_Budner@txwd.uscourts.gov>; Jennifer Clark <Jennifer_Clark@txwd.uscourts.gov>; Anna Schmidt <Anna_Schmidt@txwd.uscourts.gov>; Michael Dinnella <Michael_Dinnella@txwd.uscourts.gov>; Kristie Davis <Kristie_Davis@txwd.uscourts.gov>

**Cc** Myles, Joseph <Joseph.Myles@finnegan.com>; McCorquindale, J. Derek <Derek.McCorquindale@finnegan.com>; Berntsen, Matthew <Matthew.Berntsen@finnegan.com>; Mark Siegmund <msiegmund@cjsjlaw.com>; Austin Curry <acurry@caldwellcc.com>; Aisha Haley <ahaley@caldwellcc.com>; Daniel Pearson <dpearson@caldwellcc.com>

---

> **External sender** <lionel.lavenue@finnegan.com>
> Make sure you trust this sender before taking any actions.

Ben,

BMW objects to Onesta's refusal to meet-and-confer with BMW on these issues – by going directly to the Court and not working cooperatively with BMW.

Also, BMW objects to the allegation that BMW made any misrepresentations to the Federal Circuit, and such language should be avoided among professionals.

Again, as for Onesta's motion for emergency stay, it was denied, in that Onesta filed its appeal prematurely under Rule 65, before the injunction was subject to appeal.

BMW does plan to file a motion later today – for enforcement of the anti-lawsuit injunction and seeking a show cause for Onesta's non-compliance with the Court's ruling.

Regards,

Lionel

---

**From:** Jason Cassady <jcassady@caldwellcc.com>
**Sent:** Thursday, January 15, 2026 1:15 PM
**To:** Benjamin Budner <Benjamin_Budner@txwd.uscourts.gov>; Lavenue, Lionel <lionel.lavenue@finnegan.com>; Jennifer Clark <Jennifer_Clark@txwd.uscourts.gov>; Anna Schmidt <Anna_Schmidt@txwd.uscourts.gov>; Michael Dinnella <Michael_Dinnella@txwd.uscourts.gov>; Kristie Davis <Kristie_Davis@txwd.uscourts.gov>
**Cc:** Myles, Joseph <Joseph.Myles@finnegan.com>; McCorquindale, J. Derek <Derek.McCorquindale@finnegan.com>; Berntsen, Matthew <Matthew.Berntsen@finnegan.com>; Mark Siegmund <msiegmund@cjsjlaw.com>; Austin Curry <acurry@caldwellcc.com>; Aisha Haley <ahaley@caldwellcc.com>; Daniel Pearson <dpearson@caldwellcc.com>
**Subject:** RE: Response from BMW - Emergency Plea for a Status Conference in BMW v Onesta

Thank you Mr. Budner.

We understand the Court's ruling and will comply. Onesta respectfully requests an order from the Court on the docket, even a text order, indicating that the injunction is presently in effect. *Cf.* Dkt. 29 (not indicating the outcome of the hearing). Onesta understood its request for an emergency temporary stay to the Federal Circuit as falling within the 48 hour grace period that the Court gave us to protect the rights of our client. That motion was denied because BMW misrepresented to the Federal Circuit **"that the injunction 'has yet to take effect.'"** Dkt. 30 at 2. Onesta needs something in writing from the Court so that it can re-raise its request for an emergency temporary stay with the Federal Circuit. To the extent that temporary stay is denied, Onesta will dismiss the German actions when the stay is denied. This should be finally resolved by tomorrow, if an ECF is entered this afternoon (Onesta will seek relief at the Federal Circuit immediately thereafter). We appreciate the Court's time and do apologize for having to raise these issues.

Again I greatly appreciate the Court's patience with me.

Best,

Jason D. Cassady /// Caldwell Cassady & Curry

2121 N. Pearl Street, Suite 1200, Dallas, TX 75201

Direct Line: 214.888.4841

Main Line Telephone:214.888.4848

Fax Line: 214.888.4849

jcassady@caldwellcc.com

www.caldwellcc.com

---

**From:** Benjamin Budner <Benjamin_Budner@txwd.uscourts.gov>
**Sent:** Thursday, January 15, 2026 11:45 AM
**To:** Lavenue, Lionel <lionel.lavenue@finnegan.com>; Jason Cassady <jcassady@caldwellcc.com>; Jennifer Clark <Jennifer_Clark@txwd.uscourts.gov>; Anna Schmidt <Anna_Schmidt@txwd.uscourts.gov>; Michael Dinnella <Michael_Dinnella@txwd.uscourts.gov>; Kristie Davis <Kristie_Davis@txwd.uscourts.gov>
**Cc:** Myles, Joseph <Joseph.Myles@finnegan.com>; McCorquindale, J. Derek <Derek.McCorquindale@finnegan.com>; Berntsen, Matthew <Matthew.Berntsen@finnegan.com>; Mark Siegmund <msiegmund@cjsjlaw.com>; Austin Curry <acurry@caldwellcc.com>; Aisha Haley <ahaley@caldwellcc.com>; Daniel Pearson <dpearson@caldwellcc.com>
**Subject:** Re: Response from BMW - Emergency Plea for a Status Conference in BMW v Onesta

---

**Warning: Unusual link**
This message contains an unusual link, which may lead to a malicious site. Confirm the message is safe before clicking any links.

Counselors,

As Judge Albright stated on the record, the oral order granting BMW's motion for anti-suit injunction went into immediate effect at the time it was orally granted. The Court's intention was **not** for the injunction to take effect after release of the written order. The parties should act in accordance with the Court's oral ruling as expeditiously as possible.

Please let me know if you have remaining questions.



**Ben Budner**
*Law Clerk to the Honorable Alan D Albright*
United States District Court
Western District of Texas
Benjamin_Budner@txwd.uscourts.gov

---

**From:** Lavenue, Lionel <lionel.lavenue@finnegan.com>
**Sent:** Thursday, January 15, 2026 11:38 AM
**To:** Jason Cassady <jcassady@caldwellcc.com>; Benjamin Budner <Benjamin_Budner@txwd.uscourts.gov>; Jennifer Clark <Jennifer_Clark@txwd.uscourts.gov>; Anna Schmidt <Anna_Schmidt@txwd.uscourts.gov>; Michael Dinnella <Michael_Dinnella@txwd.uscourts.gov>; Kristie Davis <Kristie_Davis@txwd.uscourts.gov>
**Cc:** Myles, Joseph <Joseph.Myles@finnegan.com>; McCorquindale, J. Derek <Derek.McCorquindale@finnegan.com>; Berntsen, Matthew <Matthew.Berntsen@finnegan.com>; Mark Siegmund <msiegmund@cjsjlaw.com>; Austin Curry <acurry@caldwellcc.com>; Aisha Haley <ahaley@caldwellcc.com>; Daniel Pearson <dpearson@caldwellcc.com>
**Subject:** Response from BMW - Emergency Plea for a Status Conference in BMW v Onesta

 CAUTION - EXTERNAL:

Dear Law Clerks and Judge Albright,

Onesta did not consult with BMW before submitting its email to the Court.

Nonetheless, the Court's Order was clear, and Onesta has not complied (2 days have passed, and the German lawsuits are not dismissed).

As for Onesta's motion for emergency stay, it was denied, in that Onesta filed its appeal prematurely under Rule 65, before the injunction was subject to appeal.

BMW's position is that the record is clear – that this Court required the dismissal of the German lawsuits on the US patents "now" and "immediately."  Onesta has not complied (or attempted to do so).

Regards,

Lionel

**Lionel M. Lavenue** | Bio
Attorney at Law
Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
1875 Explorer Street, Suite 800, Reston, VA 20190-6023
+1 571 203 2750 | fax +1 202 408 4400 | lionel.lavenue@finnegan.com | www.finnegan.com | Linkedin profile

FINNEGAN

---

**From:** Jason Cassady <jcassady@caldwellcc.com>
**Sent:** Thursday, January 15, 2026 12:30 PM

**To:** Benjamin_Budner@txwd.uscourts.gov; Jennifer_Clark@txwd.uscourts.gov;
Anna_Schmidt@txwd.uscourts.gov; Michael_Dinnella@txwd.uscourts.gov; Kristie_Davis@txwd.uscourts.gov
**Cc:** Lavenue, Lionel <lionel.lavenue@finnegan.com>; Myles, Joseph <Joseph.Myles@finnegan.com>;
McCorquindale, J. Derek <Derek.McCorquindale@finnegan.com>; Berntsen, Matthew
<Matthew.Berntsen@finnegan.com>; Mark Siegmund <msiegmund@cjsjlaw.com>; Austin Curry
<acurry@caldwellcc.com>; Aisha Haley <ahaley@caldwellcc.com>; Daniel Pearson <dpearson@caldwellcc.com>
**Subject:** Emergency Plea for a Status Conference in BMW v Onesta

Dear Law Clerks and Judge Albright,

Onesta writes to request an emergency status conference on BMW's injunction request.  Specifically, at the hearing, it was our understanding that although the Court permitted a grace period for Onesta to comply with its order, the order was immediate.  Indeed, even the day of the hearing, BMW emailed Onesta to demand immediate compliance with your oral injunction ruling.

Onesta thus moved quickly to file papers at the Federal Circuit regarding the injunction and seeking a stay.  However, in that briefing, BMW told the Federal Circuit that your "injunction against Onesta has yet to take effect" and that "there is simply no injunction yet," apparently because in BMW's view, the oral order did not have a bond requirement and that your written order was forthcoming.

The Federal Circuit then relied on BMW's statements to deny relief and appeared to interpret your statements at the hearing to mean that the court would grant the injunction in the future, via the written order.

Onesta is trying to comply with this Court's order but is getting mixed signals about whether it is in place or not from both BMW and the Federal Circuit.  And to preserve our client's rights and ensure we do not take away from our client's ability to appeal the ruling, we are trying to avoid taking action that will later be interpreted as voluntarily dismissing the German cases without a Court Order.  Onesta and its counsel have tremendous respect for this Court and are trying to comply with the Court's order and balance our client's rights, but Onesta needs some quick guidance from the Court. Based on everything that has happened since the hearing, Onesta requests an emergency status conference with lead and local counsel and chambers to discuss these issues and better understand what the Court's understanding of the status is with respect to the injunction.

Best Regards,

Jason D. Cassady /// Caldwell Cassady & Curry
2121 N. Pearl Street, Suite 1200, Dallas, TX 75201
Direct Line: 214.888.4841
Main Line Telephone:214.888.4848
Fax Line: 214.888.4849
jcassady@caldwellcc.com
www.caldwellcc.com

NOTICE OF CONFIDENTIALITY:
The information contained in this e-mail is subject to the ATTORNEY-CLIENT and ATTORNEY WORK PRODUCT PRIVILEGE and is CONFIDENTIAL.  It is intended only for the recipient(s) designated above.  Any dissemination, distribution, copying, use or reliance upon the information contained in and transmitted with this e-mail by or to anyone other than the recipient(s) designated by the sender is unauthorized and prohibited.  If you have received

this e-mail in error, please notify the sender by reply immediately.  Any e-mail erroneously transmitted to you should be immediately destroyed.

This e-mail message is intended only for individual(s) to whom it is addressed and may contain information that is privileged, confidential, proprietary, or otherwise exempt from disclosure under applicable law. If you believe you have received this message in error, please advise the sender by return e-mail and delete it from your mailbox. Thank you.

This e-mail message is intended only for individual(s) to whom it is addressed and may contain information that is privileged, confidential, proprietary, or otherwise exempt from disclosure under applicable law. If you believe you have received this message in error, please advise the sender by return e-mail and delete it from your mailbox. Thank you.

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.

This e-mail message is intended only for individual(s) to whom it is addressed and may contain information that is privileged, confidential, proprietary, or otherwise exempt from disclosure under applicable law. If you believe you have received this message in error, please advise the sender by return e-mail and delete it from your mailbox. Thank you.

This e-mail message is intended only for individual(s) to whom it is addressed and may contain information that is privileged, confidential, proprietary, or otherwise exempt from disclosure under applicable law. If you believe you have received this message in error, please advise the sender by return e-mail and delete it from your mailbox. Thank you.

*Exhibit C*

# IN THE UNITED STATES DISTRICT
# COURT FOR THE WESTERN DISTRICT
# OF TEXAS WACO DIVISION

| | | |
|---|---|---|
| BAYERISCHE MOTOREN WERKE AKTIENGESELLSCHAFT, | ) ) ) | No. 6:25-cv-00581 |
| Plaintiff, | ) ) | |
| v. | ) ) | **JURY TRIAL** |
| ONESTA IP, LLC, | ) ) | |
| Defendant. | ) ) | |

## ORDER CLARIFYING THE COURT'S ORAL RULING
## ON BMW'S MOTION FOR ANTI-SUIT INJUNCTION

On January 13, 2026, the Court orally granted BMW's Motion for Anti-Suit Injunction. Dkt. 26 at 64. Additionally, the Court orally ordered Onesta to terminate its lawsuits in Germany asserting United States patents. *Id*. After further discussion regarding the immediacy of that termination requirement, the Court clarified that they would provide a "window" for Onesta's counsel to request an emergency stay from the Federal Circuit. Dkt. 26 at 69. On January 14, 2026, the Federal Circuit denied Onesta's motion for a temporary stay without prejudice. Dkt. 30.

To make the intention of the Court clear, the Court's oral order granting BMW's Motion for Anti-Suit Injunction and ordering Onesta to terminate its German lawsuits asserting United States patents took immediate effect. However, as stated on the record, the Court intended to provide Onesta with a reasonable "window" to request a stay from the Federal Circuit prior to termination. Dkt. 26 at 69-71. A written order memorializing the Court's reasoning is forthcoming.

**SIGNED** this 15th day of January, 2026.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE

*Exhibit D*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | | |
|---|---|---|
| BAYERISCHE MOTOREN WERKE AKTIENGESELLSCHAFT, | ) ) ) | |
| Plaintiff, | ) ) | C.A. No. 6:25-cv-00581 |
| v. | ) ) | **JURY TRIAL** |
| ONESTA IP, LLC, | ) ) | |
| Defendant. | ) ) | |

## BMW'S CORRECTED MOTION TO ENFORCE ANTI-SUIT INJUNCTION TO DISMISS GERMAN PROCEEDINGS THAT ASSERT U.S. PATENTS AND MOTION FOR AN ORDER TO SHOW CAUSE WHY ONESTA SHOULD NOT BE HELD IN CONTEMPT OF COURT

# TABLE OF CONTENTS

I.     Onesta's Willful Noncompliance with the Court's Anti-Suit Injunction ........................... 1

     A.     This Court Issued a Clear, Immediate, and Unambiguous Order Requiring Onesta to Terminate the German Proceedings, and Onesta Refuses to Comply .................................................................................................................. 2

     B.     BMW Sought Confirmation of Compliance—Which Onesta Refused ................. 3

     C.     No Stay Exists, and Onesta's Continued Defiance Is Causing Ongoing Harm ................................................................................................................... 3

II.    Onesta Should be Required to Show Cause Why It Should Not Be Held in Civil Contempt of This Court's January 13, 2026 Anti-Suit Injunction Order ........................... 4

     A.     Factor 1 ("a court order was in effect"): It Is Indisputable that this Court's Order of January 13, 2026 Was Clear and Demanded Immediate Compliance by Onesta ..................................................................................... 4

     B.     Factor 2 ("the order required certain conduct by the respondent"): It Is Also Indisputable that this Court's Order Required Specific Conduct: Immediate Termination of the German Proceedings that Seek to Enforce the U.S. Patents .............................................................................................. 5

     C.     Factor 3 ("the respondent failed to comply with the court's order"): Onesta Has Failed to Comply—and Even Continues to Defy—this Court's Order ........... 6

III.   Conclusion: The Court Should Enforce Its Anti-Suit Injunction as to Onesta and Also Require Onesta to Show Cause Why It Should Not Be Held in Civil Contempt .................................................................................................................. 6

## I.   Onesta's Willful Noncompliance with the Court's Anti-Suit Injunction

Plaintiff Bayerische Motoren Werke Aktiengesellschaft ("BMW") respectfully moves this Court to enforce the anti-suit injunction, as issued by this Court at the hearing on January 13, 2026 (the "Order"), ordering Defendant Onesta IP, LLC ("Onesta") to "terminate now" its German proceedings asserting U.S. patents against BMW.[1] Further, BMW respectfully moves this Court to order Onesta to show cause why it should not be held in civil contempt for its willful failure to comply with the Order to dismiss the proceedings in Germany. Dkt. 26 ("Transcript") at 65:7–11.

On January 13, 2026, this Court ordered Onesta to "terminate [its German proceedings] now." Transcript at 65:7–11. The ruling was clear and direct. Yet, more than two days have now elapsed since the Court's January 13, 2026 Order, and the Federal Circuit has now even denied Onesta's request for emergency relief, yet Onesta has still not terminated the German proceedings.

In good faith, BMW has repeatedly contacted counsel for Onesta to seek confirmation of Onesta's intent to terminate the German proceedings to no avail. Onesta has failed to provide any update on any of its efforts to terminate the German proceedings. Instead, Onesta has demonstrated that it has no intention of complying with the Court's Order. Given Onesta's refusal to confirm compliance, it is now readily apparent that Onesta never had any intent of complying expeditiously, as ordered, and even after the 24-hour to 48-hour time it asked for to go to the court of appeals, that time has expired, and yet, Onesta has not withdrawn the German proceedings. It is time for enforcement of the Order and for Onesta to show cause for why it should not be held in contempt.

---

[1] The relevant German proceedings on the U.S. patents are Case No. 21 O 13056/25 (asserting U.S. Patent No. 8,854,381 B2) and Case No. 21 O 13057/25 (asserting U.S. Patent No. 8,443,209 B2).

**A. This Court Issued a Clear, Immediate, and Unambiguous Order Requiring Onesta to Terminate the German Proceedings, and Onesta Refuses to Comply**

The Court's Order to Onesta was clear, immediate, and unequivocal on every front: (1) Onesta was to immediately terminate the German proceedings and (2) a stay pending appellate review was denied. The Court directed Onesta to proceed with termination with "reasonable dispatch," specifically in coordinating with German counsel to implement the Court's directive promptly.

As reflected at the hearing, the Court granted Onesta a "window" to seek a stay before the Federal Circuit. Dkt. 31. Onesta sought its stay, and the Federal Circuit denied it. Ex. B, *Bayerische Motoren Werke AG v. Onesta IP, LLC*, No. 2026-1338 (Fed. Cir. Jan. 14, 2026) (order denying motion to stay). Moreover, BMW represented—and has since confirmed again—that termination of the German proceedings could be accomplished immediately. Consistent with the Court's instruction, BMW stood ready to work with Onesta to effect termination in a prompt manner consistent with German procedure. And, BMW has provided Onesta with ample time to do so.

Now, two days have elapsed since the Court's January 13, 2026 Order, the Court's Order has not been stayed, and Onesta has not terminated the German proceedings. Also, Onesta has not provided any meaningful update on efforts to terminate the German proceedings. Onesta understood the instruction from the Court, and yet, Onesta has refused to comply with the Order.

Onesta's failure to terminate the German proceedings within "reasonable dispatch"—now more than two days after the Court's Order—constitutes a clear and continuing violation of this Court's authority. This violation is clear and ongoing, and it directly undermines this Court's Order.

**B. BMW Sought Confirmation of Compliance—Which Onesta Refused**

Following the Court's "window" to seek an emergency stay from the Federal Circuit, Onesta did just that.[2] The Federal Circuit fully considered and denied Onesta's motion. Ex. B. Following the Federal Circuit's denial, on January 14, 2026, BMW advised Onesta that it sought confirmation that Onesta would comply with the Court's ruling, consistent with the Court's instruction that the parties work together to effect termination. *See* Ex. A. Onesta advised that it was "working towards" dismissal of the German cases. *Id*. Yet, as of today (January 15, 2026), Onesta has still taken no known steps to terminate the German proceedings. This confirms that, despite further notice and opportunity, Onesta has declined to comply with the Court's Order.

**C. No Stay Exists, and Onesta's Continued Defiance Is Causing Ongoing Harm**

This Court had already made clear at the January 13, 2026 hearing that a request to stay pending appeal was rejected, ordering the German proceedings "terminate[d] now," and declining to stay its injunction Order for appellate review as a stay would "essentially eviscerate the injunction [Order]." Transcript 65:7–8, 60:25–61:12. In response, at the hearing, Onesta repeatedly confirmed its understanding that it must immediately terminate the German cases. Yet, despite the

---

[2] Emergency Motion to Stay Injunction at 1, *Bayerische Motoren Werke Aktiengesellschaft v. Onesta IP, LLC*, No. 26-1338 (Fed. Cir. Jan. 13, 2026) ("Onesta's Motion"). In recent correspondence Onesta accuses BMW of "misrepresentations" before the Federal Circuit, in that BMW correctly argued that Onesta's Motion to stay is premature under Rule 65. But BMW's arguments weren't "misstatements," as the Federal Circuit confirmed. Further, the Court's Order is immediate and enforceable because, unlike Rule 65 and Onesta's prior motion before the Federal Circuit requiring a written order, this Court does not require a written order to find Onesta in contempt of court for disobeying its January 13 oral Order. *See In re Bradley*, 588 F.3d 254, 263 (5th Cir. 2009) ("The question we face is not whether the . . . court acted properly to create an effective, appealable order. It is whether Beutel's manifestly improper actions can render him liable for contempt."). Consistent with *In re Bradley*, this Court may act to enforce its rulings, to be "consistent with prudent court management and due process—to prevent insults, oppression, and experimentation with disobedience of the law." *Id.* at 266.

absence of any stay from either this Court—beyond a 24–48-hour grace period (which has already expired)—or a stay from the Federal Circuit (which was subsequently requested and denied), Onesta continues to refuse compliance with this Court's Order. Its continued noncompliance, together with the resulting prejudice to BMW, including the continued accrual of foreign litigation burdens and the need for emergency motion practice, creates an immediate and ongoing violation of this Court's authority that requires immediate remedial action and enforcement of the Order.

## II.    Onesta Should be Required to Show Cause Why It Should Not Be Held in Civil Contempt of This Court's January 13, 2026 Anti-Suit Injunction Order

Onesta's continued maintenance of the German proceedings in defiance of the Court's Order to dismiss those proceedings satisfies every element for a finding of contempt against Onesta. This Court has broad discretion to enforce its own injunctive decrees. *Tivo Inc. v. EchoStar Corp.*, 646 F.3d 869, 881 (Fed. Cir. 2011) (en banc). For a contempt finding, all that is required is a "detailed accusation from the injured party setting forth the alleged facts constituting the contempt." *Id*. Good faith is not a defense to a contempt finding to the extent Onesta argues that its actions were in error or that its defiance of the Order is in good faith. *Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.*, 154 F.3d 1345, 1353 (Fed. Cir. 1998). To demonstrate contempt, courts consider whether "(1) a court order was in effect, (2) that the order required certain conduct by the respondent, and (3) that the respondent failed to comply with the court's order." *American Airlines, Inc. v. Allied Pilots Ass'n*, 228 F.3d 574, 581 (5th Cir. 2000). Each element is satisfied, and as such, Onesta must show cause why it is not in contempt of Court for ignoring this Court's ruling.

### A.  Factor 1 ("a court order was in effect"): It Is Indisputable that this Court's Order of January 13, 2026 Was Clear and Demanded Immediate Compliance by Onesta

For the first factor for civil contempt, courts consider whether "a court order was in effect." *American Airlines*, 228 F.3d at 581. This Court's order took effect immediately on January 13, 2026, and it could not have been clearer. At the hearing on January 13, 2026, Judge Albright stated:

4

> MR. PEARSON: ....I hesitate to ask this question, but I'm sure the German counsel will want me to. Is your further written order going to contain a deadline by which we are ordered to terminate or.
>
> THE COURT: ...I'm ordering you to terminate now. So if I look confused, I'm not sure what you're asking. I don't understand why you think there'd be a gap between me ordering you to terminate now and when you'll have to terminate.

Transcript 65:7–11; *id.* 64:8–10 ("And specifically to be clear today, Onesta is ordered to terminate the German case as to the United States patents."). There is no ambiguity in this Court's Order, beyond a 24–48-hour grace period that was requested by Oneta to seek an emergency stay (which was requested by Onesta and denied by the Federal Circuit), Dkt. 31, and that period has now expired. Yet, Onesta has demonstrated that it has no intention of withdrawing the German proceedings.

Indeed, with respect to immediacy for contempt, *In re Bradley* is instructive. There, the Fifth Circuit addressed this Court's "inherent power to enforce compliance with [] lawful orders through civil contempt." *In re Bradley*, 588 F.3d at 265. The "power is broad and pragmatic, reaching where it must—consistent with prudent court management and due process—to prevent insults, oppression, and experimentation and disobedience of the law." *Id.* at 265–66. Just like the offender in *In re Bradley*, "there is no doubt that [Onesta] received adequate notice and opportunity to be heard at all stages of the proceedings" and thus the "civil contempt power" also reaches to Onesta now. *Id.* at 266. This Court thus holds the power to find Onesta in contempt of its Order.

## B. Factor 2 ("the order required certain conduct by the respondent"): It Is Also Indisputable that this Court's Order Required Specific Conduct: Immediate Termination of the German Proceedings that Seek to Enforce the U.S. Patents

For the second factor for civil contempt, courts consider whether "the order required certain conduct by the respondent." *American Airlines*, 228 F.3d at 581. Again, at the January 13, 2026 hearing, this Court reiterated that Onesta was to immediately terminate the German proceedings:

> THE COURT: And specifically to be clear today, Onesta is ordered
> to terminate the German case as to the United States patents.

Transcript 64:8–10. The Court even addressed Onesta's request to stay the injunction Order until

it was able to appeal the Court's decision. Transcript 59:20–60:3. The Court explained that, other

than the 24–48-hour grace period: "I think me staying my injunction would allow you potentially

to completely get out of the impact of my injunction." *Id.* at 61:5–7; *see also* Dkt. 31. Despite this

clarity, Onesta has yet to terminate the German proceedings, creating its own *de facto* stay entirely

by self-help.

### C. Factor 3 ("the respondent failed to comply with the court's order"): Onesta Has Failed to Comply—and Even Continues to Defy—this Court's Order

For the third factor for civil contempt, courts consider if "the respondent failed to comply

with the court's order." *American Airlines*, 228 F.3d at 581. Rather than comply, Onesta has chosen

defiance. Onesta sought relief from the Federal Circuit, asking for a stay, while Onesta's

"forthcoming motion to stay the district court's injunction order pending this appeal is briefed and

decided." Onesta's Motion at 1, 10. The Federal Circuit denied that request. Ex. B. Absent a stay—

which Onesta does not have and which this Court and the Federal Circuit have already denied—

Onesta is required to obey this Court's order and dismiss the German proceedings. Onesta has

shown no intention to do so and must show cause for its defiance.

### III. Conclusion: The Court Should Enforce Its Anti-Suit Injunction as to Onesta and Also Require Onesta to Show Cause Why It Should Not Be Held in Civil Contempt

Onesta's refusal to terminate the German proceedings is an ongoing and deliberate

violation of this Court's clear and unambiguous January 13, 2026 Order. Onesta's conduct

threatens to undermine the effectiveness of the Court's injunction and signals that compliance is

somehow optional pending appeal. It is not. As such, BMW respectfully requests that the Court:

1. **Order immediate enforcement of its Order and termination** of the German
   proceedings asserting U.S. patents against BMW;

6

2. **Order Onesta to file a sworn declaration,** attaching documentation from the German court(s), certifying compliance; and

3. **Order Onesta to show cause** why it should not be held in civil contempt of the January 13, 2026 Anti-Suit Injunction Order.

BMW requests these remedies, plus such other and further relief that the Court deems proper.

Respectfully submitted,
 /s/ *Lionel M. Lavenue*
Lionel M. Lavenue (VA Bar No. 49005)
lionel.lavenue@finnegan.com
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, LLP
1875 Explorer Street
Suite 800
Reston, VA 20190-6023
Telephone:     (571) 203-2750
Facsimile:     (202) 408-4400

J. Derek McCorquindale (VA Bar No. 77048)
(*pro hac vice*)
derek.mccorquindale@finnegan.com
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, LLP
1875 Explorer Street
Suite 800
Reston, VA 20190-6023
Telephone:     (571) 203-2768
Facsimile:     (202) 408-4400

Matthew C. Berntsen (MA Bar No. 678533)
matthew.berntsen@finnegan.com
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, LLP
Two Seaport Lane
Sixth Floor
Boston, MA 02210-2001
Telephone:     (617) 646-1618
Facsimile:     (617) 646-1666

Joseph M. Myles (DC Bar No. 1672505)
joseph.myles@finnegan.com
FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, LLP
901 New York Avenue NW
Washington, DC 20001-4413
Telephone:     (202) 408-4372
Facsimile:     (202) 408-4400

*Attorneys for Plaintiff Bayerische Motoren Werke*
*Aktiengesellschaft*

**CERTIFICATE OF SERVICE**

I hereby certify that, on January 15, 2026, all counsel of record who have appeared in this case are being served with a copy of the foregoing via the Court's CM/ECF system.

/s/ *Lionel M. Lavenue*
Lionel M. Lavenue

## UPDATED CERTIFICATE OF CONFERENCE

BMW's counsel contacted Onesta's counsel by email on January 13, 14, and 15, 2026 regarding Onesta's compliance with the Court's January 13, 2026 Order. On each date, BMW requested confirmation that Onesta would promptly withdraw or terminate the German actions asserting U.S. patents, consistent with the Court's directive. Despite numerous requests, Onesta refused to confirm that it will dismiss the German cases, even though BMW warned that a motion to enforce was forthcoming. (Note: the original Certificate of Conference stated: "Onesta, though, has clarified that it will not seek to dismiss the German cases." After the filing of the motion, counsel for Onesta objected to this sentence and demanded correction.  Thus,  an Updated Certificate of Conference is hereby submitted.)

/s/ *Lionel M. Lavenue*
Lionel M. Lavenue

*Exhibit E*

# *Exhibit 7*

[logo:] þ

BARDEHLE PAGENBERG - Prinzregentenplatz 7 - 81675 Munich

**Sent via attorney mailbox**

District Court of Munich I
Prielmayerstr. 7
80335 Munich

Munich, November 6, 2025

*Service of records from attorney to attorney per § 195 ZPO!*

**Our reference: B180857VL3 TMS/HAC/Dsm/erm Case
number: 21 O 13057/25**

In the case

**Onesta IP, LLC,** 230 Sugartown Road, Suite 100, Wayne, PA 19087, USA

- Plaintiff -

| Attorney of record: | Peterreins Schley Patent Attorneys and Attorneys PartG mbB, Hermann-Sack-Str. 3 80331 Munich |
|---|---|
| Participating Patent Attorneys: | Peterreins Schley Patent Attorneys and Attorneys PartG mbB, Hermann-Sack-Str. 3 80331 Munich |

versus

**Bayerische Motoren Werke AG,** Petuelring 130, 80809 Munich

- Defendant -

**BARDEHLE
PAGENBERG**

Prof. Dr. Tilman Müller-Stoy
mueller-stoy@bardehle.de

Dr. Martin Drews
Martin.Drews@bardehle.de

Prinzregentenplatz 7
81675 Munich
T +49.(0)89.928 05-0
F +49.(0)89.928 05-444
www.bardehle.com

BARDEHLE PAGENBERG
Partnerschaft mbB
Patent Attorneys Attorneys
Munich District Court
Partnership Register 1152
ISO 9001 certified

In cooperation with:

[logo:] XX
YUSARN AUDREY
www.yusarn.com
Singapore

| Germany | Attorneys at Law<br>UPC Representatives ***<br>US Attorney at Law ++ | | Patent Attorneys *<br>European Patent Attorneys **<br>UPC Representatives *** | |
|---|---|---|---|---|
| BARDEHLE PAGENBERG<br>Partnerschaft mbB<br>Patent Attorneys and Attorneys<br>Prinzregentenplatz 7<br>81675 Munich<br>info@bardehle.de<br>VAT DE 129725745<br><br>List of Partners<br>within the meaning<br>of PartGG:<br>www.bardehle.com/<br>de/impressum<br><br>List of Partners<br>in accordance with the<br>German Partnership Act<br>(PartGG):<br>www.bardehle.com/<br>imprint | Johannes Heselberger **/***<br>Claus M. Eckhartt<br>Tilman Müller-Stoy ***<br>Christof Karl */**/***/++<br>Philipe Kutschke<br>Jan Bösing ***<br>Tobias Wuttke ***<br>Henning Hartwig<br>Nadine Westermeyer ***<br>Pascal Böhner<br>Stefan Lieck ***<br>Anna Giedke ***<br>Dominik Woll ***<br>Michael Kobler ***<br>Christine Fluhme<br>Kerstin Galler ***<br>Alexander von Mühlendahl | Karin Thanbichler-Brandl<br>Ronja Schregle ***<br>Claudio Reineke<br>Jan Lersch<br>Martin Drews ***<br>Julia Bernatska ***<br>Monika Harten ***<br>Carolin Thurner<br>Saskia Mertsching ***<br>Antje Weise ***<br>Nobuchika Mamine ***<br>Lisa Lilge<br>Markus Morgenroth ***<br>Eva Flach | Johannes Lang */**/***<br>Joachim Mader */**/***<br>Tobias Kaufmann */**/***<br>Georg Anetsberger */**/***<br>Axel Berger */**/***<br>Patrick Heckeler */**/***<br>Niels A. Malkomes */**/***<br>Christian Haupt */**/***<br>Benjamin Ruckert */**/***<br>Nikolaus Buchheim */**/***<br>Johannes Möller */**/***<br>Alexander Wunsch */**/***<br>Maria Kreller-Schober */**/***<br>Ralf Heddergott */**/***<br>Sebastian Müller */**/***<br>Sorel Stan */**/***<br>Preston Richard **/*** | Henry Selby-Lowndes **/***<br>Thomas Schäfer **<br>Maggie Huang */**/***<br>Daniel Werner */**/***<br>Michael-Wolfgang Waschak **<br>Marius Fischer */**/***<br>Manuel Grimm */**/***<br>Zhicheng Yu **/***<br>Meike Müller *<br>Michael Horndasch */**/***<br>Siho Chang **/***<br>Markus Ackermann */**/***<br>Maximilian Vieweg */**<br>Fabian Laude */**<br>Niels Gierse */**/***<br>Ann-Kathrin Michel */**/*** |
| BARDEHLE PAGENBERG<br>Partnership mbB<br>Patent Attorneys and Attorneys<br>Breite Strasse 27<br>40213 Dusseldorf<br>info.duesseldorf@bardehle.de<br>VAT DE 129725745 | | | Martin Hohgardt */**/***<br>Patrick Daum */**/***<br>Philipp Bovenkamp */**/***<br>Sabrina Smyczek */**/*** | |
| BARDEHLE PAGENBERG<br>Partnership mbB<br>Patent Attorneys and Attorneys<br>Bohnenstrasse 4<br>20457 Hamburg<br>info.hamburg@bardehle.de<br>VAT DE 129725745 | Volkmar Henke ***<br>Tilman Müller ***<br>Anita Peter ***<br>Emely Rohde *** | Ann-Christine Hug *** | Sabine Kossak */**/***<br>Nico Karius */** | |

| France | Attorneys<br>UPC Representatives *** | | French Patent Attorneys *<br>European Patent Attorneys **<br>UPC Representatives *** | Consultants |
|---|---|---|---|---|
| BARDEHLE PAGENBERG SELAS<br>Attorneys at the bar in Paris<br>SO Square Opéra<br>5 rue Boudreau<br>75009 Paris<br>info@bardehle.fr<br>VAT FR 71800645327 | Julien Fréneaux ***<br>Dominique Dupuis Latour<br>Rebecca Delorey<br>Axel Munier ***<br>Clément Jaffray *** | Frédéric Portal ***<br>Céleste Dufournier<br>Chloé Nicolas<br>Julie Dussaix | Lionel Vial */**/*** | Jean-Claude Combaldieu |

| Spain | | | Spanish Patent Attorneys *<br>European Patent Attorneys **<br>UPC Representatives *** | |
|---|---|---|---|---|
| BARDEHLE PAGENBERG S.L.<br>Avenida de Diagonal 598, 3o 1a<br>08021 Barcelona<br>info@bardehle.es<br>VAT ES B 53486429 | | | Mathieu de Rooij */**/***<br>Cristina Muñoz Menendez **<br>David Soler Vilamitjana ** | |

Please note our General Terms and Conditions and the CVs of our Attorneys at www.bardehle.com
Our offices act legally independent from the other countries' offices in each country and are not liable for those.

[logo:] ƀ

| Attorney of record: | Attorneys of<br>BARDEHLE PAGENBERG Partnership mbB<br>Patent Attorneys, Attorneys<br>Prinzregentenplatz 7, 81675 Munich (case<br>handled by: **Prof. Dr. Tilman Müller-Stoy, Dr. Martin Drews**) |
| Participating Patent Attorneys: | Patent attorneys of the<br>BARDEHLE PAGENBERG Partnership mbB<br>Patent Attorneys, Attorneys<br>Prince Regentplatz 7, 81675 Munich<br>(case handled by: **Dr. Patrick Heckeler, Dr. Christian Haupt**) |

we announce that we represent the Defendant in cooperation with the patent attorneys of our firm.

The Defendant will defend itself against the action and already at this point objects to the international jurisdiction of the court. The competent forum for the demand for relief based on a U.S. patent is a U.S. court. We reserve the right to present petitions and the grounds for them in separate pleadings.

In addition, we petition for the Defendant that:

**the time period to respond to the action be extended for at least five months, i.e., at least until and including**

**April 27, 2026**

The local legal dispute is part of an extensive and complex set of proceedings pending before the local court (further proceedings: 21 O 12768/25 and 21 O 13056/25). The subject matter is, in principle, a complex international dispute between the parties, which is to be settled in a concentrated manner (at least thus

2 | 3

[logo:] b

far) before the local court. The Plaintiff is asserting not only the German part of a European patent, but also two US patents for alleged acts in the territory of the USA. According to the undersigned's survey, such a *"long-arm"* patent infringement complex of cases is being managed for the first time in Germany. Although the present proceedings "only" relate to one of the U.S. patents, the unusual, additional effort associated with the complex of cases will have a significant impact on costs. The three proceedings from the complex of cases will be managed by the same team of lawyers and patent attorneys.

Dr. Martin Drews
Attorney at law
*These pleadings were signed electronically, § 130a para. 3 ZPO (Zivilprozessordnung*[German Civil Code]).

3 | 3

## CERTIFICATION

I, Timothy L. Wood, hereby certify that I am competent to translate from German to English and that the attached translation is, to the best of my knowledge and belief, a true and accurate translation.

- 20251106_Vertretungsanzeige_Fristverlaengerung_BMW_VL3

I hereby declare that all statements made herein of my own knowledge are true, and that all statements made on information and belief are believed to be true; and that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code.

Timothy L. Wood

PRINTED LINGUIST NAME

LINGUIST SIGNATURE

December 23, 2025

Date:

*Exhibit F*

# *Exhibit 6*

[logo:] Ь
•

BARDEHLE PAGENBERG - Prinzregentenplatz 7 - 81675 Munich

**Sent via attorney mailbox**

District Court of Munich I
Prielmayerstr. 7
80335 Munich

Munich, November 6, 2025

*Service of records from attorney to attorney per § 195 ZPO!*

**Our reference: B180857VL2 TMS/HAC/Dsm/erm Case number: 21 O 13056/25**

In the case

**Onesta IP, LLC,** 230 Sugartown Road, Suite 100, Wayne, PA 19087, USA

- Plaintiff -

| Attorney of record: | Peterreins Schley Patent Attorneys and Attorneys PartG mbB, Hermann-Sack-Str. 3 80331 Munich |
|---|---|
| Participating Patent Attorneys: | Peterreins Schley Patent Attorneys and Attorneys PartG mbB, Hermann-Sack-Str. 3 80331 Munich |

versus

**Bayerische Motoren Werke AG,** Petuelring 130, 80809 Munich

- Defendant -

**BARDEHLE PAGENBERG**

Prof. Dr. Tilman Müller-Stoy
mueller-stoy@bardehle.de

Dr. Martin Drews
Martin.Drews@bardehle.de

Prinzregentenplatz 7
81675 Munich
T +49.(0)89.928 05-0
F +49.(0)89.928 05-444
www.bardehle.com

BARDEHLE PAGENBERG
Partnerschaft mbB
Patent Attorneys Attorneys
Munich District Court
Partnership Register 1152
ISO 9001 certified

In cooperation with:

[logo:] XX
YUSARN AUDREY
www.yusarn.com
Singapore

| Germany | Attorneys at Law<br>UPC Representatives ***<br>US Attorney at Law ++ | | Patent Attorneys *<br>European Patent Attorneys **<br>UPC Representatives *** | |
|---|---|---|---|---|
| BARDEHLE PAGENBERG<br>Partnerschaft mbB<br>Patent Attorneys and Attorneys<br>Prinzregentenplatz 7<br>81675 Munich<br>info@bardehle.de<br>VAT DE 129725745<br><br>List of Partners<br>within the meaning<br>of PartGG:<br>www.bardehle.com/<br>de/impressum<br><br>List of Partners<br>in accordance with the<br>German Partnership Act<br>(PartGG):<br>www.bardehle.com/<br>imprint | Johannes Heselberger **/*** | Karin Thanbichler-Brandl | Johannes Lang */**/*** | Henry Selby-Lowndes **/*** |
| | Claus M. Eckhartt | Ronja Schregle *** | Joachim Mader */**/*** | Thomas Schäfer ** |
| | Tilman Müller-Stoy *** | Claudio Reineke | Tobias Kaufmann */**/*** | Maggie Huang */**/*** |
| | Christof Karl */**/***/++ | Jan Lersch | Georg Anetsberger */**/*** | Daniel Werner */**/*** |
| | Philipe Kutschke | Martin Drews *** | Axel Berger */**/*** | Michael-Wolfgang Waschak ** |
| | Jan Bösing *** | Julia Bernatska *** | Patrick Heckeler */**/*** | Marius Fischer */**/*** |
| | Tobias Wuttke *** | Monika Harten *** | Niels A. Malkomes */**/*** | Manuel Grimm */**/*** |
| | Henning Hartwig | Carolin Thurner | Christian Haupt */**/*** | Zhicheng Yu **/*** |
| | Nadine Westermeyer *** | Saskia Mertsching *** | Benjamin Ruckert */**/*** | Meike Müller * |
| | Pascal Böhner | Antje Weise *** | Nikolaus Buchheim */**/*** | Michael Horndasch */**/*** |
| | Stefan Lieck *** | Nobuchika Mamine *** | Johannes Möller */**/*** | Siho Chang **/*** |
| | Anna Giedke *** | Lisa Lilge | Alexander Wunsch */**/*** | Markus Ackermann */**/*** |
| | Dominik Woll *** | Markus Morgenroth *** | Maria Kreller-Schober */**/*** | Maximilian Vieweg */** |
| | Michael Kobler *** | Eva Flach | Ralf Heddergott */**/*** | Fabian Laude */** |
| | Christine Fluhme | | Sebastian Müller */**/*** | Niels Gierse */**/*** |
| | Kerstin Galler *** | | Sorel Stan */**/*** | Ann-Kathrin Michel */**/*** |
| | Alexander von Mühlendahl | | Preston Richard **/*** | |
| BARDEHLE PAGENBERG<br>Partnership mbB<br>Patent Attorneys and Attorneys<br>Breite Strasse 27<br>40213 Dusseldorf<br>info.duesseldorf@bardehle.de<br>VAT DE 129725745 | | | Martin Hohgardt */**/*** | |
| | | | Patrick Daum */**/*** | |
| | | | Philipp Bovenkamp */**/*** | |
| | | | Sabrina Smyczek */**/*** | |
| BARDEHLE PAGENBERG<br>Partnership mbB<br>Patent Attorneys and Attorneys<br>Bohnenstrasse 4<br>20457 Hamburg<br>info.hamburg@bardehle.de<br>VAT DE 129725745 | Volkmar Henke *** | Ann-Christine Hug *** | Sabine Kossak */**/*** | |
| | Tilman Müller *** | | Nico Karius */** | |
| | Anita Peter *** | | | |
| | Emely Rohde *** | | | |

| France | Attorneys<br>UPC Representatives *** | | French Patent Attorneys *<br>European Patent Attorneys **<br>UPC Representatives *** | Consultants |
|---|---|---|---|---|
| BARDEHLE PAGENBERG SELAS<br>Attorneys at the bar in Paris<br>SO Square Opéra<br>5 rue Boudreau<br>75009 Paris<br>info@bardehle.fr<br>VAT FR 71800645327 | Julien Fréneaux *** | Frédéric Portal *** | Lionel Vial */**/*** | Jean-Claude Combaldieu |
| | Dominique Dupuis Latour | Céleste Dufournier | | |
| | Rebecca Delorey | Chloé Nicolas | | |
| | Axel Munier *** | Julie Dussaix | | |
| | Clément Jaffray *** | | | |

| Spain | | | Spanish Patent Attorneys *<br>European Patent Attorneys **<br>UPC Representatives *** | |
|---|---|---|---|---|
| BARDEHLE PAGENBERG S.L.<br>Avenida de Diagonal 598, 3o 1a<br>08021 Barcelona<br>info@bardehle.es<br>VAT ES B 53486429 | | | Mathieu de Rooij */**/*** | |
| | | | Cristina Muñoz Menendez ** | |
| | | | David Soler Vilamitjana ** | |

Please note our General Terms and Conditions and the CVs of our Attorneys at www.bardehle.com
Our offices act legally independent from the other countries' offices in each country and are not liable for those.

[logo:] ḃ

| | |
|---|---|
| <u>Attorney of record:</u> | Attorneys of<br>BARDEHLE PAGENBERG Partnership mbB<br>Patent Attorneys, Attorneys<br>Prinzregentenplatz 7, 81675 München (case<br>handled by: **Prof. Dr. Tilman Müller-Stoy, Dr. Martin Drews)** |
| <u>Participating Patent Attorneys:</u> | Patent Attorneys of the<br>BARDEHLE PAGENBERG Partnership mbB<br>Patent Attorneys, Attorneys<br>Prince Regentplatz 7, 81675 Munich<br>(case handled by: **Dr. Patrick Heckeler,<br>Dr. Christian Haupt)** |

we announce that we represent the Defendant in cooperation with the patent attorneys of our firm.

The <u>Defendant will defend itself against the action</u> and <u>already at this point objects to the international jurisdiction of the court</u>. The competent forum for the demand for relief based on a U.S. patent is a U.S. court. We reserve the right to present petitions and the grounds for them in separate pleadings.

In addition, we petition for the Defendant that:

> **the time period to respond to the action be extended for at least five months.**

The local legal dispute is part of an extensive and complex set of proceedings pending before the local court (further proceedings: 21 O 12768/25 and 21 O 13057/25). The subject matter is, in principle, a complex international dispute between the parties, which is to be settled in a concentrated manner (at least thus far) before the local court. The Plaintiff is asserting not only the German part of a European patent, but also two US patents for alleged acts in the territory of the USA. According to the undersigned's survey, such a *"long-arm"* patent infringement complex of cases is being managed for the first time in Germany. Although the

2 | 3

[logo:] þ

present proceedings "only" relate to one of the U.S. patents, the unusual, additional effort associated with the complex of cases will have a significant impact on costs. The three proceedings from the complex of cases will be managed by the same team of lawyers and patent attorneys.

Dr. Martin Drews
Attorney at law
These pleadings were signed electronically, § 130a para. 3 ZPO (*Zivilprozessordnung*[German Civil Code]).

3 | 3

## CERTIFICATION

I, Timothy L. Wood, hereby certify that I am competent to translate from German to English and that the attached translation is, to the best of my knowledge and belief, a true and accurate translation.

- 20251106_Vertretungsanzeige_Fristverlaengerung_BMW_VL2

I hereby declare that all statements made herein of my own knowledge are true, and that all statements made on information and belief are believed to be true; and that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code.

Timothy L. Wood

PRINTED LINGUIST NAME

LINGUIST SIGNATURE

December 23, 2025

Date:

*Exhibit G*

-1-

08:15

1                IN THE UNITED STATES DISTRICT COURT
                FOR THE WESTERN DISTRICT OF TEXAS
2                         WACO DIVISION

3    BAYERISCHE MOTOREN WERKE*
       AKTIENGESELLSCHAFT    *
4                            *        January 13, 2026
     VS.                     *
5                            * CIVIL ACTION NO. 6:25-CV-581
     ONESTA IP, LLC          *
6
                    BEFORE THE HONORABLE ALAN D ALBRIGHT
7                      MOTIONS HEARING (via Zoom)

8    APPEARANCES:

9    For the Plaintiff:   Lionel M. Lavenue, Esq.
                          J. Derek McCorquindale, Esq.
10                        Finnegan, Henderson, Farabow,
                            Garrett & Dunner LLP
11                        1875 Explorer Street, Suite 800
                          Reston, VA 20190
12
                          Joseph Michael Myles, Esq.
13                        Finnegan, Henderson, Farabow,
                            Garrett & Dunner, LLP
14                        901 New York Avenue, NW
                          Washington, DC 20001
15
                          Matthew Carl Berntsen, Esq.
16                        Finnegan, Henderson, Farabow,
                            Garrett & Dunner, LLP
17                        Two Seaport Lane
                          Boston, MA 02210
18
     For the Defendant:   Daniel R. Pearson, Esq.
19                        Jason D. Cassady, Esq.
                          Austin Curry, Esq.
20                        Aisha Mahmood Haley, Esq.
                          Caldwell Cassady Curry PC
21                        2121 N. Pearl St., Suite 1200
                          Dallas, TX 75201
22
                          Mark Siegmund, Esq.
23                        Cherry Johnson Siegmund James, PLLC
                          7901 Fish Pond Road, Ste 2nd Floor
24                        Waco, TX 76710

25

1    Court Reporter:        Kristie M. Davis, CRR, RMR
                            PO Box 20994
2                           Waco, Texas 76702
                            (254) 666-0904
3

4      Proceedings recorded by mechanical stenography,

10:03    5    transcript produced by computer-aided transcription.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

| 10:03 | 1 | (Hearing begins.) |

10:03   1          (Hearing begins.)

10:03   2          DEPUTY CLERK:  A civil action in Case

10:03   3   6:25-CV-581, BMW versus Onesta IP, LLC.  Case called

10:03   4   for a motions hearing.

10:03   5          THE COURT:  Announcements from counsel,

10:03   6   please.

10:03   7          MR. LAVENUE:  Good morning, Your Honor.

10:03   8   Lionel Lavenue from Finnegan for BMW, and of record

10:03   9   with me in the Zoom room are Matt Berntsten and Derek

10:03   10   McCorquindale and via Zoom Joey Myles.  Also we have a

10:03   11   large number of Finnegan attorneys sitting in the room

10:03   12   and online.  I'll also -- our client representative is

10:03   13   on the Zoom Bernhard Gobel from BMW in Munich, Germany.

10:03   14   And also we have a number of the BMW German patent

10:03   15   lawyers from the Bardehle firm as well.

10:03   16          THE COURT:  Well, I appreciate your

10:03   17   client.  I know with the time change it's difficult.

10:04   18   So I appreciate them attending.

10:04   19          MR. SIEGMUND:  Good morning, Your Honor.

10:04   20   Mark Siegmund with Cherry Johnson Siegmund James on

10:04   21   behalf of Onesta.  With me this morning are my

10:04   22   colleagues from Caldwell Cassady Curry:  Daniel

10:04   23   Pearson, Jason Cassady, Aisha Haley, Eric Horsley and

10:04   24   Austin Curry.  Also on the call is a number of our

10:04   25   Onesta's European counsel:  Dr. Thomas Adam,

10:04  1    Dr. Claudia Feller, Dr. Simon Reuter, Maximillian

10:04  2    Bernschneider and Dr. Schley.

10:04  3              And, Your Honor, my client does send his

10:04  4    apology.  He very much wanted to attend the hearing

10:04  5    this morning, but he arranged his travel around the

10:04  6    prior hearing and was not able to reschedule.  So he

10:04  7    does send his apologies.

10:04  8              And Mr. Pearson will be arguing on behalf

10:04  9    of Onesta, Your Honor.

10:04  10             THE COURT:  Okay.  I'll start with

10:04  11   plaintiff.

10:04  12             MR. LAVENUE:  Thank you, Your Honor.  May

10:04  13   we show the slides and begin?

10:04  14             THE COURT:  Yes, please.

10:04  15             MR. LAVENUE:  Thank you.  We will load

10:04  16   that up.

10:04  17             Your Honor, are you able to see the

10:05  18   slides?

10:05  19             (Thumbs up by the Court.)

10:05  20             MR. LAVENUE:  Thank you.

10:05  21             So, Your Honor, we're here today for BMW

10:05  22   to address the motion for anti-suit injunction, the

10:05  23   ASI.  As you know, this is a very unusual case where it

10:05  24   involves an assertion of U.S. patents in Germany for

10:05  25   what we believe is the first time ever.  And for that

| | | |
|---|---|---|
| 10:05 | 1 | reason we are seeking a motion for an anti-suit |
| 10:05 | 2 | injunction for this Court to order Onesta to |
| 10:05 | 3 | discontinue the proceedings in the German action and to |
| 10:05 | 4 | allow this Court to continue with the enforcement of |
| 10:05 | 5 | the U.S. patents. |
| 10:05 | 6 | In order to address the issues for the |
| 10:05 | 7 | anti-suit injunction, we have an overview here on |
| 10:05 | 8 | Slide 2 of what I'd like to talk about first is, who is |
| 10:05 | 9 | Onesta and what have they done here? |
| 10:05 | 10 | Second is, why has Onesta sued in Germany |
| 10:06 | 11 | on a U.S. patent?  Or on two U.S. patents? |
| 10:06 | 12 | Third is, why is BMW seeking an anti-suit |
| | 13 | injunction? |
| 10:06 | 14 | And, fourth, we'll go through some but |
| 10:06 | 15 | not all of the factors.  There are nine arguments that |
| 10:06 | 16 | we have under the Unterweser considerations for an |
| 10:06 | 17 | anti-suit injunction.  I've picked two of those nine to |
| 10:06 | 18 | talk about today in the oral hearing, but we briefed |
| 10:06 | 19 | all nine of those arguments in our briefing. |
| 10:06 | 20 | As far as who Onesta is, Onesta's a |
| 10:06 | 21 | non-practicing entity suing BMW, as you know.  One of |
| 10:06 | 22 | the greatest car companies in the world.  And Onesta is |
| 10:06 | 23 | run by these two individuals shown on Slide 3. |
| 10:06 | 24 | Onesta's a U.S. company and Onesta has U.S. individuals |
| 10:06 | 25 | running it.  So this is basically a U.S. company with |

6

10:06   1   U.S. representatives that is taking an action in

10:06   2   Germany against a German company based upon a U.S.

10:06   3   patent.

10:06   4           Onesta in Germany has filed a lawsuit for

10:06   5   patent infringement of three different patents.  In

10:07   6   Germany when a lawsuit is filed, the -- unlike in the

10:07   7   U.S. where it can all be in one case, each patent

10:07   8   receives its own individual case and it's in each --

10:07   9   they're separately considered.  They're separately

10:07  10   determined.  They're three different cases.

10:07  11           So the three patents that were asserted

10:07  12   against BMW, two are U.S., one is German, European with

10:07  13   a German variant.  And these are in three different

10:07  14   cases.

10:07  15           So when we talk about the fact that we

10:07  16   would -- we wish for this Court to issue an anti-suit

10:07  17   injunction, it only pertains to the two cases with the

10:07  18   U.S. patents.  It does not pertain to the one case with

10:07  19   the European patent.

10:07  20           And the history of how Onesta got to this

10:07  21   point is this seems to be -- we don't know all the

10:07  22   facts because this is the very beginning of the case.

10:07  23   There's been no discovery.  We don't know any of the

10:07  24   history other than what we know from the public record.

10:07  25   And we know that Onesta obtained their patents from

10:08  1    AMD, a chip manufacturer, and this happened in 2024.

10:08  2                 In 2025 Onesta, using these AMD patents,

10:08  3    sued two other chip manufacturers, Qualcomm and NVIDIA,

10:08  4    in the Western District before Your Honor and also in

10:08  5    the ITC.

10:08  6                 So whether or not this action by Onesta

10:08  7    is some sort of global war among chip manufacturers,

10:08  8    we're not sure, but we do know that the patents that

10:08  9    are at issue, the two U.S. patents here, they are

10:08  10   formerly from AMD now owned by Onesta and they're being

10:08  11   asserted against two other chip manufacturers Qualcomm

10:08  12   and NVIDIA.

10:08  13                As you know, Your Honor, because of the

10:08  14   ITC case, the case before you -- before Qualcomm and

10:08  15   NVIDIA has been stayed pending the outcome of the ITC

10:08  16   case.

10:08  17                Now, what happened and how BMW got

10:08  18   involved by Onesta is that in September of 2025, Onesta

10:08  19   dropped one of the patents from the ITC case, the '381

10:09  20   patent, and then one month later in October Onesta sued

10:09  21   BMW in Germany on that patent, the '381 patent, that

10:09  22   was in the WDTX and that was at the ITC but had been

10:09  23   dropped with regard to Qualcomm and NVIDIA and inserted

10:09  24   that patent plus one other patent, the '920 patent, in

10:09  25   Germany.  And so that's how we got here today.  So that

8

| 10:09 | 1 | is a little background on who Onesta is from what we |
| 10:09 | 2 | know and what they have done. |
| 10:09 | 3 | Now, how have they brought a lawsuit in |
| 10:09 | 4 | Germany based upon U.S. patents for the first time ever |
| 10:09 | 5 | in history?  And the way they've done that is with this |
| 10:09 | 6 | case BSH versus Electrolux.  This is a case from the |
| 10:09 | 7 | Court of Justice of the European Union which I |
| 10:09 | 8 | understand is basically the Supreme Court for the EU. |
| 10:09 | 9 | And in this case there was a -- in the lower case it |
| 10:09 | 10 | started out in Sweden.  And in Sweden one party sued |
| 10:10 | 11 | another party for patent infringement based upon not |
| 10:10 | 12 | only a Swedish patent but also a host of other patents, |
| 10:10 | 13 | including a German patent, a U.K. patent, a Turkish |
| 10:10 | 14 | patent and others. |
| 10:10 | 15 | And so in Sweden the Court had to decide, |
| 10:10 | 16 | well, you know, this is a Swedish case about a Swedish |
| 10:10 | 17 | patent plus all these other patents.  Do I consider all |
| 10:10 | 18 | these other patents from the EU?  And the Court said |
| 10:10 | 19 | yes.  And so it went up to the Court of Justice of the |
| 10:10 | 20 | European Union and they said, you know what?  If you're |
| 10:10 | 21 | in Europe and you're asserting a patent that is |
| 10:10 | 22 | European, EPC, EU, then that's okay. |
| 10:10 | 23 | What the Court of Justice of the European |
| 10:10 | 24 | Union did not say is they did not address patents |
| 10:10 | 25 | outside of the EU or patents outside of the UPC.  They |

| | | |
|---|---|---|
| 10:10 | 1 | were silent on that.  But did they say it absolutely |
| 10:10 | 2 | does include the U.S.?  No.  Did they say it absolutely |
| 10:10 | 3 | does not include the U.S.?  No.  It's just silent. |
| 10:11 | 4 | So what Onesta has done is they've taken |
| 10:11 | 5 | this silence and they said, well, we're going to do a |
| 10:11 | 6 | test case and we're going to file a test case in |
| 10:11 | 7 | Germany against BMW on two U.S. patents and we're going |
| 10:11 | 8 | to cite BSH-Electrolux for the purpose of saying, well, |
| 10:11 | 9 | because they said that the Swedish court could consider |
| 10:11 | 10 | all these other patents, then that includes the U.S. as |
| 10:11 | 11 | well. |
| 10:11 | 12 | And they admit that it's a test case. |
| 10:11 | 13 | They admit that it's never happened before, and |
| 10:11 | 14 | that's -- bottom line is why we're seeking the |
| 10:11 | 15 | anti-suit injunction is because the status quo for U.S. |
| 10:11 | 16 | patent enforcement is U.S. patents are enforced in the |
| 10:11 | 17 | U.S.  They're not enforced in Europe.  They're not |
| 10:11 | 18 | enforced by a ruling by the Court of Justice of the |
| 10:11 | 19 | European Union that any European country, as Onesta |
| 10:11 | 20 | argues, can enforce U.S. patents. |
| 10:11 | 21 | So BSH did not deal specifically with |
| 10:11 | 22 | U.S. patents as we noted.  I think that the experts |
| 10:12 | 23 | here in this case, both BMW's expert and Onesta's |
| 10:12 | 24 | expert, they are in agreement that the Munich court has |
| 10:12 | 25 | the option of going forward and in fact the lawsuits |

10:12  1   that have been filed in Munich, they're pending.

10:12  2   They're going forward.  And they believe that the

10:12  3   Munich court will continue to take those.

10:12  4              And in fact, Onesta's German counsel,

10:12  5   they even posted on their website, is this crazy?

10:12  6   Well, they say, hardly.  Just groundbreaking.  So, you

10:12  7   know, everyone on Onesta's side knows that this is a

10:12  8   test case.  It's a first opportunity.  It's something

10:12  9   that's brand new.

10:12  10             Why does BMW oppose this?  So why doesn't

10:12  11  BMW, a German company, just say, well, you know, we're

10:12  12  a German company.  We're based in Munich.  Let's go

10:12  13  forward.  Well, the reason is is because the Munich

10:12  14  courts do not and have not ever addressed U.S. patents

10:12  15  before.  So BMW, a German company, they want a U.S.

10:12  16  court to address U.S. patents.  That's the way it

10:12  17  should be.

10:13  18             The Onesta lawsuit, why did they file

10:13  19  suit in Germany?  We don't know for sure, but we can

10:13  20  know that there are a lot of things that they can

10:13  21  benefit from from filing in Germany that they would not

10:13  22  receive before Your Honor.  For example, in Germany

10:13  23  there's no eBay.  And so in Germany there's no

10:13  24  preclusion to injunctions for NPEs or at least

10:13  25  limitation to injunctions.

10:13   1                    62 percent of cases against NPEs in

10:13   2   Germany result in an injunction.  And that's compared

10:13   3   to 27 percent of NPE wins in the U.S. which do not

10:13   4   include injunctions.

10:13   5                    THE COURT:  You said -- I'm sorry.  You

10:13   6   said against NPEs.  I think you meant asserted by NPEs,

10:13   7   right, get injunctions?

10:13   8                    MR. LAVENUE:  Correct, Your Honor.

10:13   9                    THE COURT:  Okay.

10:13  10                    MR. LAVENUE:  Thank you.

10:13  11                    Also, the -- there's no estoppel effect

10:13  12   for the assertion in Germany for Onesta.  So if Onesta

10:13  13   sues in Germany and they lose, they could then come to

10:14  14   the U.S. and sue again.

10:14  15                    Also, the Munich court would not address

10:14  16   validity like in the U.S.

10:14  17                    THE COURT:  Well, let me ask you this

10:14  18   about that, what you just said --

10:14  19                    MR. LAVENUE:  Yes, sir.

10:14  20                    THE COURT:  -- about preclusion.

10:14  21                    If -- and I think you're right that this

10:14  22   has never been tried before.  But I'm not sure -- if

10:14  23   it's never been tried before, do we know -- and I'm

10:14  24   going to assume for a second BMW wins in Germany in

10:14  25   this case if it were to move forward.  I'm sorry.

—12—

| | | |
|---|---|---|
| 10:14 | 1 | Yeah.  BMW wins.  How do we know that there would be no |
| 10:14 | 2 | preclusive -- it would not be preclusive here?  Because |
| 10:14 | 3 | I don't think it's ever been tested, right?  I'm just |
| 10:14 | 4 | trying to understand all of your arguments.  So why do |
| 10:14 | 5 | you say there would be -- there'd be no preclusion if |
| 10:14 | 6 | BMW's successful on these patents in Germany? |
| 10:14 | 7 | MR. LAVENUE:  Well, we believe that in |
| 10:14 | 8 | order for there to be inclusion, there would be -- have |
| 10:14 | 9 | to be a full and fair right for BMW to have all the |
| 10:15 | 10 | benefits under -- |
| 10:15 | 11 | THE COURT:  No.  I'm flipping. |
| 10:15 | 12 | MR. LAVENUE:  Okay. |
| 10:15 | 13 | THE COURT:  What I'm saying is -- and I'm |
| 10:15 | 14 | not saying anything about what I'm going to do.  What |
| 10:15 | 15 | I'm trying to figure out is I don't stop it.  It moves |
| 10:15 | 16 | forward in Germany.  BMW wins.  I think what you just |
| 10:15 | 17 | said is the problem is there's no preclusion because |
| 10:15 | 18 | they could just come here and assert it.  Obviously |
| 10:15 | 19 | they can -- they could file the lawsuit here, but why |
| 10:15 | 20 | wouldn't BMW or anyone in BMW's shoes in the same |
| 10:15 | 21 | situation be able to argue that there is preclusion |
| 10:15 | 22 | here?  And my bigger point is since this has never |
| 10:15 | 23 | happened before, how do we know what would happen if |
| 10:15 | 24 | you win with regard to preclusion if they asserted it |
| 10:15 | 25 | again in the United States?  It seems to me that's |

10:15  1  something that's never happened on top of something

10:15  2  that's never happened.

10:15  3          MR. LAVENUE:  You're exactly right, Your

10:15  4  Honor.  I agree.  We definitely do not know what would

10:16  5  be the specific outcome.  It's just that we are

10:16  6  concerned that if the case goes forward and we were to

10:16  7  lose that we would still be able to -- we might have to

10:16  8  face it again.  That would be the problem.

10:16  9          THE COURT:  I get that.  But I'm just

10:16  10  saying the way you said it was -- and I think you were

10:16  11  intimating, but maybe you weren't, for example, the

10:16  12  difference between the PTAB -- the difference with the

10:16  13  PTAB, if they lose at the PTAB, they can't -- there is

10:16  14  preclusion over the use of that entity.  And here what

10:16  15  I'm saying is since it's never happened, I don't know

10:16  16  what it would be.  And so -- but I think we're on the

10:16  17  same page now.  So you can continue if you want to.

10:16  18          MR. LAVENUE:  Thank you, Your Honor.

10:16  19          And that's exactly right.

10:16  20          THE COURT:  And I just wanted to show you

10:16  21  I'm actually listening to what you're saying.

10:16  22          (Laughter.)

10:16  23          MR. LAVENUE:  Thank you, Your Honor.

10:16  24          So we were just going through, you know,

10:16  25  our speculation as to why Onesta sued in Germany.

—14—

10:17  1          You know, one other point that we can

10:17  2   note is that the Munich court has never addressed

10:17  3   validity like in the U.S.  It's interesting because

10:17  4   when you file a lawsuit for patent infringement in

10:17  5   Germany, it goes to a infringement court and that

10:17  6   infringement court does not in Germany consider

10:17  7   validity.

10:17  8          You know, I studied in Germany.  I speak

10:17  9   German.  I've been to a number of infringement cases in

10:17  10  the Munich district court.  I've listened to the

10:17  11  arguments, you know, in German.  The building is a very

10:17  12  interesting building with no air conditioning, and in

10:17  13  the middle of summer it's no fun.  But the Munich

10:17  14  district court does not address validity.  They only

10:17  15  address infringement.

10:17  16         And so here also not only would we have

10:17  17  all these novel issues, but the Munich court would have

10:17  18  for the first time ever to have to address validity

10:17  19  under U.S. patent law which it's never done before

10:17  20  because not only does it not consider U.S. patent law,

10:17  21  validity, it's never even considered validity.  The

10:18  22  only thing that a German court does is it looks to

10:18  23  whether or not there's been a separate action for

10:18  24  validity for -- against the German Patent Office and

10:18  25  then whether or not to stay the case for validity.  So

10:18  1   it's very unusual.

10:18  2              THE COURT:  And you'd be looking at a

10:18  3   Munich court obviously -- obviously Munich, Germany --

10:18  4   but a Munich court having to perform the task of

10:18  5   performing a Markman of a patent that was prosecuted in

10:18  6   the United States in English, right?  And my guess is

10:18  7   on top of that, you'd be hard pressed to find a judge

10:18  8   in Germany who has performed a Markman hearing that's

10:18  9   similar to what happens in the United States, right?

10:18  10             MR. LAVENUE:  Confirmed.  There's never

10:18  11  been a German judge who has conducted a Markman.

10:18  12  There's never been a German judge who has conducted a

10:18  13  Markman in English because the proceedings in Germany

10:18  14  are in German.

       15             THE COURT:  Right.

10:18  16             MR. LAVENUE:  There's never been a German

10:18  17  judge who has had to apply U.S. patent law for

10:18  18  validity.  So all those are absolutely correct, Your

10:18  19  Honor.

10:18  20             THE COURT:  Okay.

10:18  21             MR. LAVENUE:  So with that we go to one

10:19  22  other speculation as to why we think the lawsuit was

10:19  23  brought in Germany is the '381 patent, one of the two

10:19  24  patents, it has been -- it has been criticized not only

10:19  25  by the USPTO.  There has been an IPR that was

10:19    1    instituted on certain claims.

10:19    2                    THE COURT:  I'm not going to be very

10:19    3    moved by this argument.

10:19    4                    MR. LAVENUE:  Okay.  And then also the

10:19    5    ITC.  Onesta itself dropped that patent.

10:19    6                    And one other thing that we note on Slide

10:19    7    16, Your Honor, is there's been some commentary since

10:19    8    the briefing.  This commentary is by a professor who

10:19    9    was the chairman of the advisory committee for the

10:19   10    Unified Patent Court.  And this professor was cited by

10:19   11    Onesta in its expert report as someone that this Court

10:19   12    should listen to.

10:19   13                    And, in fact, the professor here, he

10:19   14    notes that the Munich court is an ideal forum, as he

10:19   15    says here, to coerce high license fees and damage

10:19   16    payments on the basis of weak and shaky patents.

10:20   17                    That's why I wanted to just note that

10:20   18    that patent had been challenged.

10:20   19                    He also went on to explain that he

10:20   20    believes that the assertion by the Munich court would

10:20   21    be judicial imperialism.  So this is a professor from

10:20   22    Germany who has looked at this situation involving

10:20   23    Onesta and BMW and he has said, I've looked at this and

10:20   24    I believe it's wrong.

10:20   25                    He says that the German court should --

| 10:20 | 1 | it goes too far, as he explains, by trying to accept |
| 10:20 | 2 | cases and apply U.S. law and that it is what he |
| 10:20 | 3 | believes -- this is the top quote that we have -- a we |
| 10:20 | 4 | do things better here attitude which he believes is |
| 10:20 | 5 | improper. |
| 10:20 | 6 | So all of these are reasons why we think |
| 10:20 | 7 | Onesta has brought the case in Germany. |
| 10:20 | 8 | THE COURT:  Just for the record -- I'm |
| 10:20 | 9 | sorry.  Just for the record, the gentleman you just |
| 10:20 | 10 | discussed, he's not a paid expert.  He's an independent |
| 10:21 | 11 | person and you're pointing out to me something he |
| 10:21 | 12 | independently said about this? |
| 10:21 | 13 | MR. LAVENUE:  That's exactly correct, |
| 10:21 | 14 | Your Honor. |
| 10:21 | 15 | THE COURT:  Okay.  Got it. |
| 10:21 | 16 | MR. LAVENUE:  So with that, Your Honor, |
| 10:21 | 17 | why is BMW seeking anti-suit injunction?  As I noted |
| 10:21 | 18 | before, it's to maintain the status quo where |
| 10:21 | 19 | U.S. patents are litigated by U.S. courts.  We do not |
| 10:21 | 20 | believe that Onesta should be able to break that 250 |
| 10:21 | 21 | year now process for the enforcement of U.S. patents. |
| 10:21 | 22 | Why is the ASI necessary?  Because this |
| 10:21 | 23 | is the first and unprecedented case that has ever been |
| 10:21 | 24 | brought of a legal theory that U.S. patents should be |
| 10:21 | 25 | brought in Germany.  We believe that that is wrong. |

| | | |
|---|---|---|
| 10:21 | 1 | Without an ASI, also, Your Honor, there |
| 10:21 | 2 | would be, at least from what we understand, two |
| 10:21 | 3 | proceedings running at the same time on these |
| 10:21 | 4 | U.S. patents.  The Munich case is going to go forward |
| 10:21 | 5 | because we know from the notice that was filed by |
| 10:22 | 6 | Onesta on January 8th that they say that they do not |
| 10:22 | 7 | plan to seek an AASI, an anti-anti-suit injunction. |
| 10:22 | 8 | And so if that's the case, then the Munich case is |
| 10:22 | 9 | going forward, and of course your case is going |
| 10:22 | 10 | forward, Your Honor.  So that means two proceedings are |
| 10:22 | 11 | going forward at the same time.  That is -- that is -- |
| 10:22 | 12 | you know, that's duplicative and ridiculous. |
| 10:22 | 13 | Second, the Munich proceedings are super |
| 10:22 | 14 | fast.  They would actually end before your case ends, |
| 10:22 | 15 | Your Honor, and we believe that that is another reason |
| 10:22 | 16 | why the ASI should be granted because the Munich case |
| 10:22 | 17 | should not be able to go forward faster than the U.S. |
| 10:22 | 18 | case. |
| 10:22 | 19 | The disparity between the injunctive |
| 10:22 | 20 | relief between Munich and the U.S. is completely |
| 10:22 | 21 | different.  That's another reason. |
| 10:22 | 22 | And, finally, the U.S. case could |
| 10:22 | 23 | potentially even become moot before Your Honor's able |
| 10:22 | 24 | to rule because of the speed. |
| 10:22 | 25 | So for all of these reasons, we're |

10:22   1   seeking the ASI.

10:22   2                   What has the Fifth Circuit said as far as

10:23   3   to granting an ASI?  Well, that is the Unterweser case.

10:23   4   And in the Unterweser case they outline -- the Fifth

10:23   5   Circuit has outlined the authority of this Court, a

10:23   6   district court, to enjoin parties from proceeding in

10:23   7   another jurisdiction.

10:23   8                   And here, you know, we really don't even

10:23   9   have any issues as to the persons or the parties

10:23   10   because Onesta is a U.S. company.  The representatives

10:23   11   of Onesta are U.S. entity -- or U.S. persons.  So we

10:23   12   don't even have the issue of whether or not Your Honor

10:23   13   has the ability to order that under any type of

10:23   14   circumstances under the Onesta factors.

10:23   15                   The Onesta court in the Fifth Circuit set

10:23   16   various factors as to how an ASI can be granted.

10:23   17   Various threat factors.  And there are four different

10:23   18   threats that they outlined.  We're arguing three of

10:23   19   those four threats and we have subparts to each one of

10:23   20   those.

10:23   21                   Notably, Your Honor, we only have to show

10:23   22   one threat in order to satisfy the Unterweser test, and

10:24   23   we present nine.  We presented you with nine arguments.

10:24   24   So we only have to win on one in order to get under the

10:24   25   ASI standard for Unterweser, the anti-suit injunction

10:24  1   satisfied legally.  And we believe that we've done

10:24  2   that.

10:24  3            Now, one other thing that has to be

10:24  4   considered other than the threat factors is comity.

10:24  5   And Your Honor knows that the Fifth Circuit has said,

10:24  6   well, we do have to consider comity, but we don't have

10:24  7   to bow down to comity.  And the Fifth Circuit rulings

10:24  8   have been very clear that notions of comity do not

10:24  9   dominate the analysis and we do not elevate comity to

10:24  10  overrule the considerations for U.S. jurisdictional

10:24  11  purposes, for example.

10:24  12           With that I just show you on Slide 26

10:24  13  these are the nine factors that we have that we believe

10:24  14  that we've satisfied.  There's four under Threat 1;

10:24  15  three under Threat 2; and then under Threat 3 which

10:24  16  we've renumbered -- in our briefing it's Threat 4, but

10:25  17  we've renumbered it from 4 to 3 for the purposes of the

10:25  18  oral hearing just for avoiding confusion.  But we have

10:25  19  nine different arguments.

10:25  20           And what I'd like to do is I'd like to

10:25  21  just focus on two of those and then I believe that

10:25  22  we'll rest on the briefing on the others unless it

10:25  23  comes up in oral argument.

10:25  24           And the first is the duty to preserve and

10:25  25  protect the Court's jurisdiction.

10:25  1              So Onesta's Munich case threatens the

10:25  2    jurisdiction of every court in the United States.  You

10:25  3    know, we looked at the PowerPoint presentation that we

10:25  4    exchanged with Onesta last night and they have a map of

10:25  5    the world in their PowerPoint presentation and they

10:25  6    allege that under the BSH-Electrolux case that the

10:25  7    European courts will be able to litigate the patents of

10:25  8    the entire world in Europe now according to them.  So

10:25  9    not only the U.S., but the implications are pretty

10:25  10   Draconian.

10:25  11             This case we're only dealing with this

10:25  12   one case in the U.S. and so we're protecting the U.S.

10:26  13   jurisdiction and this Court's jurisdiction.  And that's

10:26  14   why BMW so strongly believes that this is a case that

10:26  15   should be addressed in the U.S. because only -- as you

10:26  16   noted, Your Honor, only Your Honor has had so many

10:26  17   Markman hearings and you understand all of the rules

10:26  18   and requirements of the U.S. patent law.  The judges in

10:26  19   Munich do not know any of that and have never done so.

10:26  20             So with that Threat No. 1, protecting the

10:26  21   Court's jurisdiction, the Supreme Court has said that

10:26  22   courts have an obligation to do that.

10:26  23             And we would submit that based upon that,

10:26  24   we have satisfied Threat 1 for the Onesta -- for the

10:26  25   Unterweser test.

10:26 1          Now, Onesta comes back and they say,

10:26 2 well, we've mischaracterized the rules for protecting

10:26 3 the jurisdiction and that we say that federal courts

10:26 4 must always exercise the full scope of jurisdiction,

10:26 5 but that's not what we're saying.  We're not saying

10:26 6 that you, Your Honor, or any U.S. court has to always

10:26 7 take as much jurisdiction as it possibly can.  We're

10:27 8 just saying in this particular case that here this

10:27 9 Court has to take jurisdiction over this and that

10:27 10 factor overrules having the Munich court address a U.S.

10:27 11 patent.

10:27 12          This is also consistent with recent White

10:27 13 House policy on national security and protecting the

10:27 14 U.S. market and U.S. consumers.  So it's interesting

10:27 15 that Onesta, they wish to get an injunction from a

10:27 16 German judge in a German court that affects U.S.

10:27 17 persons and U.S. markets and U.S. national security.

10:27 18 So, you know, that does not seem like an appropriate

10:27 19 balancing of the test for that issue as well.

10:27 20          With that I'll move on to the next of the

10:27 21 two examples I wanted to point out of the nine factors,

10:27 22 and that is duplication due to vexatious and oppressive

10:27 23 litigation.  So I'll jump from Slide 32 to Slide 71.

10:27 24          And Slide 71 we note that under Threat

10:28 25 2(c) Onesta's foreign litigation would be vexatious and

| 10:28 | 1 | oppressive litigation because of the duplication of the |
| 10:28 | 2 | cases.  We would have one case or actually two cases in |
| 10:28 | 3 | Germany with those two patents and we would have one |
| 10:28 | 4 | case in the U.S., and that duplication is something |
| 10:28 | 5 | that is to be avoided.  In fact, the Fifth Circuit has |
| 10:28 | 6 | made clear that the district court does not abuse its |
| 10:28 | 7 | discretion by issuing an anti-suit injunction when |
| 10:28 | 8 | there is simultaneous prosecution of the same action in |
| 10:28 | 9 | a foreign forum thousands of miles away which is |
| 10:28 | 10 | exactly what we have here. |
| 10:28 | 11 | So of the two examples that I'm pointing |
| 10:28 | 12 | out for purposes of the threats that justify an |
| 10:28 | 13 | anti-suit injunction, this may be the strongest one. |
| 10:28 | 14 | Again, I looked at the slides from Onesta |
| 10:28 | 15 | that they'll be showing you today and I did not really |
| 10:28 | 16 | see a strong rebuttal to this issue. |
| 10:28 | 17 | The Fifth Circuit has defined duplicative |
| 10:28 | 18 | suits as those involving the same or similar legal |
| 10:28 | 19 | basis or identical claims.  We clearly have that.  And |
| 10:29 | 20 | so the duplication of cases is met. |
| 10:29 | 21 | Onesta claims that its foreign litigation |
| 10:29 | 22 | is not fully duplicative because there's a European |
| 10:29 | 23 | patent as well, but like I said, Your Honor, there's |
| 10:29 | 24 | three cases in Germany.  One case is the European |
| 10:29 | 25 | patent, and two cases are the U.S. patents.  We're only |

| | | |
|---|---|---|
| 10:29 | 1 | asking Your Honor to order an anti-suit injunction for |
| 10:29 | 2 | the two U.S. cases.  Not for the European patent case. |
| 10:29 | 3 | That case would go forward.  So there is full |
| 10:29 | 4 | duplication in contrast to what Onesta argues. |
| 10:29 | 5 | BMW understands that Onesta submitted |
| 10:29 | 6 | this January 8th, 2026 notice saying that they're not |
| 10:29 | 7 | going to seek the anti-anti-suit injunction.  And so we |
| 10:29 | 8 | know that there's going to be a duplication of cases |
| 10:29 | 9 | for that reason. |
| 10:29 | 10 | With that, Your Honor, I'm going to jump |
| 10:29 | 11 | to the issue of comity because the Fifth Circuit has |
| 10:29 | 12 | said that for Unterweser we have to at least consider |
| 10:29 | 13 | that.  And so we will. |
| 10:30 | 14 | What is comity?  Comity is respect for |
| 10:30 | 15 | another forum's laws and judicial decisions, but -- |
| 10:30 | 16 | THE COURT:  I'm -- you can go back to |
| 10:30 | 17 | your last slide. |
| 10:30 | 18 | MR. LAVENUE:  Yes, sir.  We're jumping |
| 10:30 | 19 | back to that slide, Your Honor. |
| 10:30 | 20 | THE COURT:  Okay.  I mean, it's not |
| 10:30 | 21 | important.  I know what I was going to ask.  I want you |
| 10:30 | 22 | to -- no.  The one with the list of -- it seems to |
| 10:30 | 23 | me -- I'd like to hear your argument with respect to |
| 10:30 | 24 | the loss of the right to a jury trial because I'm going |
| 10:30 | 25 | to ask opposing counsel about that.  So I'd like to |

| 10:30 | 1 | hear your... |
| 10:30 | 2 | MR. LAVENUE:  Thank you, Your Honor. |
| 10:30 | 3 | We will jump to -- that's 1(b)and we'll |
| 10:30 | 4 | jump to that.  But basically I can tell you without |
| 10:30 | 5 | even looking at the slides that there is a right to a |
| 10:30 | 6 | jury trial.  And I was -- because this is such a strong |
| 10:30 | 7 | argument, which I think you're picking up on, Your |
| 10:30 | 8 | Honor, I was going to save it for my rebuttal, but I'll |
| 10:31 | 9 | take it right now. |
| 10:31 | 10 | And so there is a right to a jury trial. |
| 10:31 | 11 | And Onesta says that we do not have a right to a jury |
| 10:31 | 12 | trial because they have not yet asserted a claim for |
| 10:31 | 13 | damages.  But that is not correct because the Federal |
| 10:31 | 14 | Circuit has made clear that there is a right to a jury |
| 10:31 | 15 | trial from the point that we assert a DJ.  And once we |
| 10:31 | 16 | assert the DJ, then it's up to Onesta to disclaim the |
| 10:31 | 17 | right to damages under a counterclaim of infringement. |
| 10:31 | 18 | If they disclaim that they have a right to damages |
| 10:31 | 19 | under a counterclaim for infringement, then perhaps the |
| 10:31 | 20 | right to a jury trial would be removed, but not until |
| 10:31 | 21 | that point. |
| 10:31 | 22 | And I think that, Your Honor, goes to the |
| 10:31 | 23 | reason why we had a little fight with counsel for |
| 10:31 | 24 | Onesta over their extension of time for their answer |
| 10:31 | 25 | because they wanted an extension of time and we asked |

| | | |
|---|---|---|
| 10:31 | 1 | for a reciprocal extension of time for Germany but we |
| 10:31 | 2 | also wanted them to take a position on whether or not |
| 10:32 | 3 | they plan to bring a counterclaim for damages because |
| 10:32 | 4 | it goes to the anti-suit injunction issue of whether or |
| 10:32 | 5 | not there's a right to a jury trial.  So perhaps they |
| 10:32 | 6 | can take the position today in their presentation as to |
| 10:32 | 7 | whether or not they do or do not plan to bring a |
| 10:32 | 8 | counterclaim for damages in this proceeding.  Because |
| 10:32 | 9 | if they do, then the right to jury trial is assured, |
| 10:32 | 10 | and that has been very clear as we know. |
| 10:32 | 11 | On Slide 37 we note that the right to a |
| 10:32 | 12 | jury trial is secured.  And I think on Slide -- yes. |
| 10:32 | 13 | Here we have it.  On Slide 36 it's the In Re Technology |
| 10:32 | 14 | Licensing Corp.  If the patentee has abandoned any |
| 10:32 | 15 | claim for damages, the related invalidity claims are |
| 10:32 | 16 | triable to the bench. |
| 10:32 | 17 | So up until the point that Onesta has |
| 10:32 | 18 | disclaimed its damages claim in this case, our right to |
| 10:32 | 19 | a jury trial stands. |
| 10:33 | 20 | Unless you have any questions, I'll jump |
| 10:33 | 21 | back to comity.  Thank you. |
| 10:33 | 22 | THE COURT:  All good. |
| 10:33 | 23 | MR. LAVENUE:  So with that, Your Honor, |
| 10:33 | 24 | we will just wrap up the Unterweser analysis which |
| 10:33 | 25 | requires us to at least think about comity.  And the |

10:33  1    Supreme Court has said that comity, where we respect

10:33  2    another forum's laws and jurisdictions, is not an

10:33  3    absolute obligation.

10:33  4           The Fifth Circuit has said that we do not

10:33  5    have to bow down to comity when we analyze the other

10:33  6    threat factors under the Unterweser analysis.

10:33  7           And I think that on Slide 94 we note the

10:33  8    Voda case.  The Voda case has pretty much looked at a

10:33  9    very similar situation where there was a district court

10:33  10   in the Western District of Oklahoma, Your Honor, where

10:33  11   a plaintiff has said we want to enforce a German patent

10:33  12   in Oklahoma, and the district court said, okay.  Let's

10:33  13   do it.  Well, that then went to the Federal Circuit and

10:33  14   the Federal Circuit said no.  You know, you do not

10:34  15   assert a German patent in the U.S. proceedings.

10:34  16          The reason for that considered comity as

10:34  17   well, but despite the fact that they were considering

10:34  18   comity, it -- the Federal Circuit said you do not bring

10:34  19   a German patent in the U.S. courts.  And so basically

10:34  20   it's kind of the inverse of what we're looking at here.

10:34  21          Interestingly, for the first time ever in

10:34  22   the slides that we saw last night from Onesta, Onesta

10:34  23   did find a district court case where there was an

10:34  24   argument that distinguished Voda.  And so in Voda there

10:34  25   was a consideration of whether or not the German patent

| 10:34 | 1 | should be brought and the Federal Circuit when they |
| 10:34 | 2 | said no, they said, well, we're not looking at |
| 10:34 | 3 | diversity jurisdiction. |
| 10:34 | 4 | And there was one case that they cited |
| 10:34 | 5 | from Ohio, I believe, and in that case the judge said, |
| 10:34 | 6 | well, there is diversity jurisdiction for a foreign |
| 10:35 | 7 | patent and I'm going to allow that to go forward, but |
| 10:35 | 8 | the very next thing on the docket after that ruling |
| 10:35 | 9 | was -- by the way, that's a district court, not the |
| 10:35 | 10 | Federal Circuit, of course, was the case was dismissed. |
| 10:35 | 11 | And that case has only been cited by one other district |
| 10:35 | 12 | court from Maine -- this all came up last night, Your |
| 10:35 | 13 | Honor.  This is all new.  That district court case was |
| 10:35 | 14 | cited by a case in Maine and that's it.  So there's |
| 10:35 | 15 | only two cases that have already -- that have looked at |
| 10:35 | 16 | that. |
| 10:35 | 17 | By the way, the case in Maine did not |
| 10:35 | 18 | apply diversity jurisdiction solely, but there was also |
| 10:35 | 19 | a forum selection clause. |
| 10:35 | 20 | So all of this is all new, but otherwise |
| 10:35 | 21 | the Voda case we believe is clear.  The Voda case says |
| 10:35 | 22 | that you do not enforce German patents in the U.S.  And |
| 10:35 | 23 | there's been nothing from the Federal Circuit that has |
| 10:35 | 24 | indicated otherwise. |
| 10:35 | 25 | Our request for a ASI is very narrowly |

| | | |
|---|---|---|
| 10:35 | 1 | tailored and we believe that it does not implicate or |
| 10:35 | 2 | in any way impinge upon comity considerations. |
| 10:36 | 3 | The BSH case from the European court, it |
| 10:36 | 4 | is -- it's interesting in the way that Onesta is asking |
| 10:36 | 5 | you, Your Honor, to apply this.  We know that when they |
| 10:36 | 6 | consider policy arguments, we show on Slide 96 they |
| 10:36 | 7 | sort of have a hypocritical argument.  And we think |
| 10:36 | 8 | it's a little bit insulting where they say, well, Your |
| 10:36 | 9 | Honor, when you need to decide, you, Judge Albright, in |
| 10:36 | 10 | the Western District of Texas, when you need to decide |
| 10:36 | 11 | issues as to whether or not we are allowed to sue in |
| 10:36 | 12 | Germany, that should be handled by the political |
| 10:36 | 13 | branches of government, not you. |
| 10:36 | 14 | However, Onesta says, but whenever the |
| 10:36 | 15 | German court gets to decide whether or not they have |
| 10:36 | 16 | jurisdiction, well, Onesta does not say that the |
| 10:36 | 17 | political branches of the EU government should decide |
| 10:36 | 18 | that.  They want to bow down to a ruling by the courts, |
| 10:36 | 19 | by a judge.  And so they're willing to accept the judge |
| 10:36 | 20 | from the -- Europe on what is said, but they're not |
| 10:37 | 21 | willing to accept what a judge from the U.S. says.  We |
| 10:37 | 22 | find this hypocritical position.  You know, this |
| 10:37 | 23 | completely undermines the comity argument from our |
| 10:37 | 24 | perspective. |
| 10:37 | 25 | Also, we note that there's no treaties |

10:37   1   that allow for what Onesta's asking for.  You know,

10:37   2   we've looked at the Paris convention, the PCT

10:37   3   convention, the TRIPS agreement.  There's nothing that

10:37   4   supports what is being requested by Onesta.

10:37   5          With that, Your Honor, I've really gone

10:37   6   through all of my main points and I would just like to

10:37   7   conclude that for that reason we ask that the Court

10:37   8   grant an anti-suit injunction against Onesta to enjoin

10:37   9   it from pursuing the lawsuits against the two

10:37  10   U.S. patents in Munich.

10:37  11          On this Slide 101 I've shown you the

10:37  12   schedule for the German case.  There are only four

10:37  13   briefs in the German case:  The complaint, the

10:37  14   statement of defense, the reply and the rejoinder.

10:37  15   BMW's response for both of the U.S. patent cases in

10:38  16   Germany is due in February 24th and March 2nd for those

10:38  17   two patents.  This is upcoming soon.  You know, there's

10:38  18   no discovery in the Munich court.  There's no

10:38  19   depositions.  There's no jury trial.  You know, BMW --

10:38  20   there's no Markman, as Your Honor noted.  BMW will not

10:38  21   have any of the protections for the enforcement of

10:38  22   U.S. patents as they would in the U.S.  I know that

10:38  23   Onesta will say, well, the German judge is going to do

10:38  24   that, but, yes.  The German judge has never done that

10:38  25   before.  And this kind of just shows why we need the

| | | |
|---|---|---|
| 10:38 | 1 | ASI and why we need it soon. |
| 10:38 | 2 | Now, is there anything else that we need |
| 10:38 | 3 | from Your Honor?  Do we need a continuation of the TRO |
| 10:38 | 4 | for the anti-anti-suit injunction? |
| 10:38 | 5 | And I'll just end on this, Your Honor, on |
| 10:38 | 6 | Slide 35.  The notice that was submitted by Onesta |
| 10:38 | 7 | where they say that they do not intend to seek an AASI, |
| 10:38 | 8 | they say that -- they use the word "intend."  They do |
| 10:39 | 9 | not commit specifically and unequivocally on the record |
| 10:39 | 10 | that they will not pursue an AASI.  So for that reason |
| 10:39 | 11 | we believe a continuation of the TRO in the form of a |
| 10:39 | 12 | protective order is needed at least until they express |
| 10:39 | 13 | to you an unequivocal agreement that they will not in |
| 10:39 | 14 | any way impinge upon the right for the lawsuit in |
| 10:39 | 15 | Germany to be terminated by an ASI. |
| 10:39 | 16 | And with that, Your Honor, unless you |
| 10:39 | 17 | have any questions, I appreciate the time today. |
| 10:39 | 18 | THE COURT:  Response? |
| 10:39 | 19 | MR. PEARSON:  Thanks, Your Honor.  Daniel |
| 10:39 | 20 | Pearson on behalf of Onesta.  I'm going to try to pull |
| 10:39 | 21 | up my slides. |
| 10:39 | 22 | Your Honor, counsel for BMW said that |
| 10:40 | 23 | this was a very unusual case, and in certain respects I |
| 10:40 | 24 | agree. |
| 10:40 | 25 | Your Honor's very aware of all of the |

| | | |
|---|---|---|
| 10:40 | 1 | times that a defendant has come before Your Honor and |
| 10:40 | 2 | begged and pleaded and filed mandamus actions seeking |
| 10:40 | 3 | to be transferred to wherever their domicile is. |
| 10:40 | 4 | Nothing defendants want more than to be sued at their |
| 10:40 | 5 | domicile.  And yet in this case we have BMW who was |
| 10:40 | 6 | properly sued at their domicile running to this Court |
| 10:40 | 7 | to beg you to save them from the courts of Germany.  It |
| 10:40 | 8 | is very unusual. |
| 10:40 | 9 | To begin, Your Honor, an ASI is not |
| 10:40 | 10 | warranted in this case because there is no threat to |
| 10:40 | 11 | Your Honor's jurisdiction.  This DJ case is going to |
| 10:40 | 12 | proceed as a normal case would.  We have said on the |
| 10:40 | 13 | record at Docket 24 that we will not seek an AASI from |
| 10:40 | 14 | a Munich court to enjoin BMW from pursuing this action. |
| 10:41 | 15 | There was a conspiracy theory argument |
| 10:41 | 16 | that there was some -- |
| 10:41 | 17 | THE COURT:  I need you to jump ahead to |
| 10:41 | 18 | why you should be allowed to sue in Germany.  And |
| 10:41 | 19 | actually let me start off by asking you, does Onesta |
| 10:41 | 20 | take the position that it could have filed this same |
| 10:41 | 21 | suit filed in Germany in any of the European courts? |
| 10:41 | 22 | MR. PEARSON:  Absolutely not, Your Honor. |
| 10:41 | 23 | The only reason it could file it in the Munich court |
| 10:41 | 24 | specifically is because that is where BMW's domicile |
| 10:41 | 25 | is. |

| | |
|---|---|
| 10:41 | 1 |

THE COURT:  Okay.  I'm sorry.  Let me try
it differently.  Let's say it's a British company.
Jaguar.  Could you file a -- and let's assume that the
patents would apply.  Could you have filed -- could
you -- is your argument that you have the right to sue
in the U.K. because it's Jaguar asserting U.S. patents?

MR. PEARSON:  I don't believe that the
U.K. is still a member of the EU, so no.

THE COURT:  Okay.  Okay.  Let me go with
France then because I can name a French company.
French company.  I don't know, Pujol.  You could assert
in the French -- because I know they are a member of
this -- or Italy or any of the countries.  Your
position is that you could file a United States patent
against an Italian company in Italy?

MR. PEARSON:  Yes, Your Honor.  That is
the holding of Electrolux, and it's controlling law in
the EU.

THE COURT:  Okay.  Got it.

MR. PEARSON:  And so, you know, with
respect to Your Honor's question about why we sued in
Germany, it's because the suit is proper and there
is --

THE COURT:  Oh, I didn't mean to imply --
I get it was -- I get that BMW's a German company.  My

10:42   1   concern is over whether or not you have the power to

10:43   2   sue any European country in their incorporated country

10:43   3   asserting a U.S. patent.

10:43   4              MR. PEARSON:  That is my understanding of

10:43   5   the holding of Electrolux, Your Honor, and it is based

10:43   6   on the notion that a country has control over its

10:43   7   citizens.  And so because BMW's a German company,

10:43   8   Germany has general jurisdiction over --

10:43   9              THE COURT:  All I care about is whether

10:43   10  or not you should be allowed to file a U.S. patent in a

10:43   11  European country.  So you're kind of going down a path

10:43   12  I don't care about.

10:43   13             MR. PEARSON:  I understand, Your Honor,

10:43   14  and I think opinions can disagree as to whether

        15  Electrolux should have been decided the way that it

10:43   16  was, but as of now it is the law and we have done our

10:43   17  best to follow it and we did.

10:43   18             So with respect to the specific request

10:43   19  for an ASI, because there is no threat to Your Honor's

10:43   20  jurisdiction in view of our notice that we will not

10:43   21  seek an AASI, at least specifically with a request to

10:44   22  the relief requested by BMW, BMW does not have standing

10:44   23  to seek an ASI regarding interference with this Court's

10:44   24  jurisdiction.  There is no threat of us filing an AASI.

10:44   25             And so Point 2 of BMW's proposed order

| | | |
|---|---|---|
| 10:44 | 1 | they -- there's no standing.  There's no subject-matter |
| 10:44 | 2 | jurisdiction for the Court to enter that particular |
| 10:44 | 3 | part of their requested ASI under the Supreme Court |
| 10:44 | 4 | case Friends of the Earth where it holds that you must |
| 10:44 | 5 | have standing for every individual piece of the relief |
| 10:44 | 6 | that you seek. |
| 10:44 | 7 | Broadly, Your Honor -- |
| 10:44 | 8 | THE COURT:  Are you about to move to |
| 10:44 | 9 | something other than standing? |
| 10:44 | 10 | MR. PEARSON:  Yes, Your Honor. |
| 10:44 | 11 | THE COURT:  Okay.  Let me hear then from |
| 10:44 | 12 | the plaintiff.  I don't remember the plaintiff |
| 10:44 | 13 | addressing that particular standing issue, and it's one |
| 10:44 | 14 | I care about. |
| 10:44 | 15 | MR. LAVENUE:  Your Honor, I believe that |
| 10:44 | 16 | counsel for Onesta is just referring to Point 2 from |
| 10:45 | 17 | the requested relief that we seek.  And Point 2 from |
| 10:45 | 18 | the requested relief that we seek is still live.  We do |
| 10:45 | 19 | not believe that there is a lack of standing just based |
| 10:45 | 20 | upon the fact that there is a claim that there will not |
| 10:45 | 21 | be action -- they intend not to take action based upon |
| 10:45 | 22 | an anti-anti-suit injunction.  So we believe that that |
| 10:45 | 23 | means that it's ripe.  It's a ripe issue. |
| 10:45 | 24 | And by the way, the terminology at issue |
| 10:45 | 25 | which is Point 2 -- I have it here before me -- it's, |

| 10:45 | 1 | quote:  Take no action in the Munich Regional Court I |
| 10:45 | 2 | which would interfere in any way with this Court's |
| 10:45 | 3 | jurisdiction to determine BMW's declaratory judgment |
| 10:45 | 4 | claims, end quote. |
| 10:45 | 5 | So that's the point -- that's the only |
| 10:45 | 6 | point that they are apparently claiming that there's a |
| 10:45 | 7 | standing issue on, and we believe that it is still |
| 10:45 | 8 | ripe, but because that instruction under the ASI is not |
| 10:46 | 9 | specific only to AASI but it's merely saying that they |
| 10:46 | 10 | will not take action that interferes with this Court's |
| 10:46 | 11 | jurisdiction, therefore standing remains. |
| 10:46 | 12 | THE COURT:  And, counsel, you're welcome |
| 10:46 | 13 | to respond to that argument. |
| 10:46 | 14 | MR. PEARSON:  My response is that our |
| 10:46 | 15 | notice was clear and we gave notice that we're |
| 10:46 | 16 | unequivocally not going to do anything in Germany that |
| 10:46 | 17 | interferes with this -- attempts to interfere with this |
| 10:46 | 18 | Court's jurisdiction. |
| 10:46 | 19 | It's also worth observing that the German |
| 10:46 | 20 | court literally does not have the power to issue a sua |
| 10:46 | 21 | sponte anti-anti-suit injunction.  There will be |
| 10:46 | 22 | nothing from the German action that interferes with the |
| 10:46 | 23 | Court's jurisdiction in this case.  And so there is no |
| 10:46 | 24 | case or controversy with respect to Point 2 of the |
| 10:46 | 25 | proposed order.  That's my unequivocal commitment to |

| | | |
|---|---|---|
| 10:46 | 1 | the extent counsel for BMW thought that the notice was |
| 10:46 | 2 | insufficient. |
| 10:46 | 3 | THE COURT: And anything else from |
| 10:46 | 4 | plaintiff on that? |
| 10:46 | 5 | MR. LAVENUE: Only thing that we would |
| 10:46 | 6 | add, Your Honor, is counsel for Onesta says that the |
| 10:47 | 7 | Court in Munich does not have sua sponte the authority |
| 10:47 | 8 | to issue an anti-anti-suit injunction. That is not our |
| 10:47 | 9 | understanding. Our understanding is that the Court in |
| 10:47 | 10 | Munich would have the authority to do so just I think |
| 10:47 | 11 | as Your Honor would have the authority to do so in the |
| 10:47 | 12 | U.S. sua sponte. |
| 10:47 | 13 | THE COURT: Okay. And any response to |
| 10:47 | 14 | that? |
| 10:47 | 15 | MR. PEARSON: My response is that's not |
| 10:47 | 16 | what my German counsel has told me. So I don't -- |
| 10:47 | 17 | that's my response. |
| 10:47 | 18 | THE COURT: Okay. I'm sorry. And I |
| 10:47 | 19 | interrupted you. If you want to continue with your |
| 10:47 | 20 | argument. |
| 10:47 | 21 | MR. PEARSON: At a high level, Your |
| 10:47 | 22 | Honor, anti-suit injunctions are an extraordinary |
| 10:47 | 23 | remedy. The Fifth Circuit is very clear on that that |
| 10:47 | 24 | granting an anti-suit injunction should be the |
| 10:47 | 25 | exception, not the rule. |

10:47  1          Further, under --

10:47  2          THE COURT:  I don't think the plaintiff

10:47  3   disputes that.  So.

10:47  4          MR. PEARSON:  And further under Ganpat,

10:47  5   Your Honor, the test is clear if an American court

10:48  6   thinks that its jurisdiction is going to be interfered

10:48  7   with, then it can issue an anti-suit injunction.

10:48  8   Otherwise it is improper.  And that's what we have

10:48  9   here.

10:48  10          The Ganpat case says when a foreign court

10:48  11   tries to keep an American court from hearing a case, it

10:48  12   frustrates the American litigation.

10:48  13          That just is not happening, and so an

10:48  14   anti-suit injunction is improper.  BMW encourages Your

10:48  15   Honor to grant an anti-suit injunction to maintain its

10:48  16   understanding of the status quo in its papers in its

10:48  17   reply.

10:48  18          The Fifth Circuit is clear in Canal

10:48  19   Authority of the State of Florida that there's always a

10:48  20   status quo and you shouldn't grant a preliminary

10:48  21   injunction just to maintain a status quo unless the

10:48  22   Court's ability to render a meaningful decision on the

10:48  23   merits would otherwise be in jeopardy.

10:48  24          And, again, there is absolutely no threat

10:48  25   to Your Honor's ability to render a meaningful decision

| | | |
|---|---|---|
| 10:48 | 1 | in BMW's DJ action that they've filed. |
| 10:49 | 2 | THE COURT:  And I should know this, but |
| 10:49 | 3 | I'm not sure I do.  The appeal of what I do on this |
| 10:49 | 4 | decision goes to the Fifth or the Federal Circuit? |
| 10:49 | 5 | MR. PEARSON:  It goes to the Federal |
| 10:49 | 6 | Circuit to be decided under Fifth Circuit law. |
| 10:49 | 7 | THE COURT:  Okay.  That's what I thought. |
| 10:49 | 8 | I thought it was worth asking.  So thank you. |
| 10:49 | 9 | MR. PEARSON:  Your Honor, I think also |
| 10:49 | 10 | it's worth observing that the order of operations of |
| 10:49 | 11 | these cases is very important.  The German case was |
| 10:49 | 12 | filed first and BMW is the one that filed the second |
| 10:49 | 13 | case that it called duplicative and ridiculous.  So we |
| 10:49 | 14 | didn't do that.  And BMW tries to escape this by |
| 10:49 | 15 | pointing out that there's no first-to-file rule in an |
| 10:49 | 16 | anti-suit injunction consideration.  And that's true. |
| 10:49 | 17 | There is no first to file rule that results in an |
| 10:49 | 18 | automatic result, but the order of operations is still |
| 10:49 | 19 | highly relevant as set forth by the Ninth Circuit in |
| 10:49 | 20 | Microsoft versus Motorola.  That was in BMW's opening |
| 10:50 | 21 | papers. |
| 10:50 | 22 | In reply they cite the Compagnie case. |
| 10:50 | 23 | They only cite part of the footnote, but it goes on to |
| 10:50 | 24 | say that restraining a party from pursuing an action in |
| 10:50 | 25 | a foreign jurisdiction should only be taken with care |

| | | |
|---|---|---|
| 10:50 | 1 | and great restraint. |
| 10:50 | 2 | THE COURT:  Well, absent -- in this |
| 10:50 | 3 | situation we have here, though, absent you all, Onesta, |
| 10:50 | 4 | telling BMW in advance you were going to file in |
| 10:50 | 5 | Germany, there's literally no way you were not -- |
| 10:50 | 6 | there's no way it was ever going to be that you weren't |
| 10:50 | 7 | going to be the first to file, right? |
| 10:50 | 8 | MR. PEARSON:  Well, I think that's right, |
| 10:50 | 9 | Your Honor.  I just think that who filed first is |
| 10:50 | 10 | relevant.  And all of the cases that they cited, when a |
| 10:50 | 11 | court granted an ASI that was affirmed, many are |
| 10:50 | 12 | reversed, but when it was affirmed -- |
| 10:50 | 13 | THE COURT:  I don't think you can find a |
| 10:50 | 14 | case that has this fact -- if you can, let me know. |
| 10:50 | 15 | But I don't know why the first to file would make a |
| 10:51 | 16 | difference here.  You know, the first to file has, you |
| 10:51 | 17 | know, reasons of comity and judicial efficiency and all |
| 10:51 | 18 | that.  Here it's clear to all of us that BMW is saying |
| 10:51 | 19 | you can't do what you're doing.  And I don't -- I'm |
| 10:51 | 20 | just letting you know I don't know why I would pay any |
| 10:51 | 21 | attention to who filed first because in this case you |
| 10:51 | 22 | had to file first or none of us would be standing here. |
| 10:51 | 23 | And so, you know, I don't understand how who filed |
| 10:51 | 24 | first makes a difference in this unique particular case |
| 10:51 | 25 | where you had to be the first to file. |

10:51   1          MR. PEARSON:  Well, I think it is

10:51   2   certainly relevant under Unterweser Factor 2 which if

10:51   3   you just look at the words of the test, what you're

10:52   4   analyzing is whether the prosecution of a foreign

10:52   5   lawsuit would.  And it's whether the foreign lawsuit

10:52   6   would be vexatious or oppressive.  And all of the fact

10:52   7   patterns where an ASI is granted, what happens is

10:52   8   someone files a lawsuit and then -- in the U.S. and

10:52   9   then later someone files a foreign lawsuit, the

10:52  10   defendant, and then a court says, no, defendant.  You

10:52  11   can't have your second lawsuit.  I had jurisdiction

10:52  12   first.  That's just the ordinary fact pattern of the

10:52  13   cases, Your Honor.  And we think it is relevant.

10:52  14          So we also think, Your Honor, it's

10:52  15   important to note under considerations of comity that

10:52  16   BMW also made jurisdictional objections in Germany.

10:52  17   And to the extent there is any question as to whether

10:52  18   Germany has proper jurisdiction, we believe that it

10:52  19   should be the German court that rules on that and

10:52  20   resolves --

10:52  21          THE COURT:  I'm sorry.  Your position is

10:53  22   that a German court should decide whether or not it has

10:53  23   the ability to preside over a patent issued in the

10:53  24   United States?

10:53  25          MR. PEARSON:  I'm saying that a German

10:53  1    court should be the court of the first instance to

10:53  2    decide the importance of the Electrolux decision that

10:53  3    rules EU law.  And so BMW's --

10:53  4                    THE COURT:  What if I don't think a

10:53  5    European -- any European court has jurisdiction over

10:53  6    any party, whether it's a German company in Germany or

10:53  7    any of that.  If I don't think a European court has

10:53  8    jurisdiction over any party to prosecute a United

10:53  9    States patent?

10:53  10                   MR. PEARSON:  Well, then I think that we

10:53  11   have a delicate issue of comity that must be addressed

10:53  12   with great restraint because --

10:54  13                   THE COURT:  Why would I address it with

10:54  14   great restraint?  If I believe that you don't have a

10:54  15   jurisdictional basis to have filed this case in Germany

10:54  16   asserting United States patents, patents being found in

10:54  17   the Constitution, the right to a jury being found in

10:54  18   the Constitution, which would be denied, I don't --

10:54  19   I'll just say I don't think much of your comity

10:54  20   argument.  I don't think much of an argument where a

10:54  21   United States district court would defer to a European

10:54  22   court over whether or not a European court can maintain

10:54  23   a case where it's -- they're asserting infringement of

10:54  24   a United States patent.  So.

10:54  25                   MR. PEARSON:  Very well, Your Honor.  I'd

—43—

| | | |
|---|---|---|
| 10:54 | 1 | then like to shift to issues of exclusive jurisdiction. |
| 10:54 | 2 | And it's BMW's position that United States courts have |
| 10:54 | 3 | exclusive jurisdiction over patent litigation. |
| 10:55 | 4 | THE COURT:  Well, I want you to know |
| 10:55 | 5 | that's the way I see it too.  So go ahead. |
| 10:55 | 6 | MR. PEARSON:  Very well, Your Honor. |
| 10:55 | 7 | Then I would just like to say I won't try to change |
| 10:55 | 8 | your mind. |
| 10:55 | 9 | THE COURT:  Well, you would not be able |
| 10:55 | 10 | to. |
| 10:55 | 11 | MR. PEARSON:  I won't, Your Honor. |
| 10:55 | 12 | THE COURT:  I don't -- frankly, I'm |
| 10:55 | 13 | baffled that you think there's a contrary argument |
| 10:55 | 14 | given -- you know, I have to bet -- I will bet you |
| 10:55 | 15 | right now $100.  I don't know that it's ethical to do |
| 10:55 | 16 | that, but I will bet you $100,000 that you have said at |
| 10:55 | 17 | least once in every patent trial you've tried to the |
| 10:55 | 18 | jury that the United States -- that the right to a |
| 10:55 | 19 | patent is found in the United States Constitution.  And |
| 10:55 | 20 | that you've also told the jury that the right to a jury |
| 10:55 | 21 | trial is in the United States Constitution.  You've |
| 10:55 | 22 | said that in every trial you've ever had, right? |
| 10:55 | 23 | MR. PEARSON:  Absolutely, Your Honor. |
| 10:55 | 24 | And I value and think those rights are great.  Right? |
| 10:56 | 25 | THE COURT:  And I happen to think they're |

| | | |
|---|---|---|
| 10:56 | 1 | exclusive. |
| 10:56 | 2 | MR. PEARSON: Very well, Your Honor. |
| 10:56 | 3 | The only thing that I just want to raise |
| 10:56 | 4 | for Your Honor is that they're -- at least as the |
| 10:56 | 5 | potential of a Circuit split if you say that |
| 10:56 | 6 | specifically in an opinion, which Your Honor of course |
| 10:56 | 7 | might agree that he's on the right side of, but at |
| 10:56 | 8 | least the Ninth Circuit in Creative has said that 28 |
| 10:56 | 9 | USC 1338(a) is not exclusive of foreign courts. It has |
| 10:56 | 10 | specifically held that. And the rationale for that is |
| 10:56 | 11 | pretty obvious, that U.S. laws do not have |
| 10:56 | 12 | extraterritorial power. So just as United States |
| 10:56 | 13 | patents do not have extraterritorial power, United |
| 10:56 | 14 | States venue laws do not have extraterritorial power |
| 10:56 | 15 | and do not bind foreign courts. So that is the line of |
| 10:56 | 16 | reasoning. |
| 10:56 | 17 | THE COURT: I think you can guess and I |
| 10:57 | 18 | won't say on the record, but I think you can guess how |
| 10:57 | 19 | concerned I am in making my decision about whether or |
| 10:57 | 20 | not -- given my history, whether or not there would be |
| 10:57 | 21 | a Circuit split over something I do. |
| 10:57 | 22 | And so it's -- generally speaking, I'm -- |
| 10:57 | 23 | I feel like I need to do the right thing and the |
| 10:57 | 24 | Circuit court needs to do whatever they do when they |
| 10:57 | 25 | review my decision. So I'm not moved by that either. |

| | | |
|---|---|---|
| 10:57 | 1 | MR. PEARSON:  I understand, Your Honor, |
| 10:57 | 2 | and I was in no way -- |
| 10:57 | 3 | THE COURT:  Oh, no.  I took no offense to |
| 10:57 | 4 | it.  I'm just -- you know, you've got clients on -- |
| 10:57 | 5 | you've got clients here.  You've got a lot of people, |
| 10:57 | 6 | and I think -- I know I always talk too much, but part |
| 10:57 | 7 | of the reason I talk is I think it's fair for the folks |
| 10:57 | 8 | who are in attendance to understand, as much as I can |
| 10:57 | 9 | explain it, why I'm thinking what I'm thinking and also |
| 10:58 | 10 | of course to give you an opportunity to persuade me why |
| 10:58 | 11 | I'm wrong in the areas where that's possible.  But I |
| 10:58 | 12 | didn't take any -- I took no offense to that. |
| 10:58 | 13 | MR. PEARSON:  Well, Your Honor, with |
| 10:58 | 14 | respect to high level policies about where these cases |
| 10:58 | 15 | should be happening, I would like to, you know, just |
| 10:58 | 16 | say to the Court that it is not -- BMW presents a false |
| 10:58 | 17 | dichotomy that U.S. rights must be enforced here or |
| 10:58 | 18 | there and a decision must be made as to one or the |
| 10:58 | 19 | other.  Jurisdictions can be additive and that can be |
| 10:58 | 20 | good.  There's nothing -- you know, they cite the White |
| 10:58 | 21 | House's policy about wanting to protect our |
| 10:58 | 22 | international intellectual property from foreign theft |
| 10:58 | 23 | and we want to -- |
| 10:58 | 24 | THE COURT:  And I'll say -- I'll tell |
| 10:58 | 25 | them.  I wasn't moved by that at all either.  So all I |

10:58    1    care about is whether or not I think a German court or

10:59    2    any European court or any court other than a United

10:59    3    States district court should be handling United States

10:59    4    patent litigation.  That is pretty much the beginning

10:59    5    and ending of my analysis here.

10:59    6              MR. PEARSON:  Very well, Your Honor.

10:59    7              Well, I would at least like to observe

10:59    8    that it does not harm America.  It strengthens America

10:59    9    if other countries want to prevent its citizens from

10:59   10    committing torts in the United States.  That is

10:59   11    fundamentally a good thing.

10:59   12              THE COURT:  I didn't -- what tort?

10:59   13              MR. PEARSON:  The tort of patent

10:59   14    infringement.

10:59   15              THE COURT:  I don't -- okay.  I think I

10:59   16    understand what you're saying.

10:59   17              MR. PEARSON:  I'm saying patent

10:59   18    infringement is bad and being --

10:59   19              THE COURT:  I think patent infringement

10:59   20    is bad and I think it's up to the United States

10:59   21    district courts to determine whether there's patent

10:59   22    infringement of a United States issued patent.  We are

10:59   23    in complete agreement patent infringement is bad.

10:59   24              MR. PEARSON:  I understand, Your Honor,

10:59   25    and I was -- and I was trying to just make the

| 11:00 | 1 | observation.  I made it unclearly, but I was trying to |
| 11:00 | 2 | make the observation that it helps America if our |
| 11:00 | 3 | allies overseas want to help us by preventing their |
| 11:00 | 4 | citizens from doing bad things in America. |
| 11:00 | 5 | THE COURT:  I get that.  And if I ever |
| 11:00 | 6 | run for office, I want it to be as clear as possible I |
| 11:00 | 7 | think -- I'm on the record patent infringement is bad |
| 11:00 | 8 | and I want to protect American citizens from it.  So |
| 11:00 | 9 | I'm all in on that. |
| 11:00 | 10 | MR. PEARSON:  I would like to discuss the |
| 11:00 | 11 | right to a jury trial, Your Honor. |
| 11:00 | 12 | THE COURT:  Please.  I want you to. |
| 11:00 | 13 | MR. PEARSON:  Because you're interested |
| 11:00 | 14 | in that. |
| 11:00 | 15 | I think that it is possible that in this |
| 11:00 | 16 | case BMW will obtain a jury right.  I think under the |
| 11:00 | 17 | law right now because there has been no pleaded claim |
| 11:00 | 18 | for legal relief, BMW does not have a right to a jury |
| 11:00 | 19 | trial.  And so at least their points with respect to |
| 11:00 | 20 | jury trial are at the very least premature because no |
| 11:01 | 21 | jury trial right exists, and that is clear under In Re |
| 11:01 | 22 | Tech Licensing that the DJ counter claimant is only |
| 11:01 | 23 | entitled to a jury trial if there's no legal claim for |
| 11:01 | 24 | relief.  So that's where we're at.  There is no right |
| 11:01 | 25 | to a jury trial. |

| | | |
|---|---|---|
| 11:01 | 1 | THE COURT: Currently. |
| 11:01 | 2 | MR. PEARSON: That's exactly right, Your |
| 11:01 | 3 | Honor. |
| 11:01 | 4 | THE COURT: I get your -- I completely |
| 11:01 | 5 | get your argument. I do. |
| 11:01 | 6 | MR. PEARSON: Okay. And I would also add |
| 11:01 | 7 | to it, Your Honor, that at least the 11th Circuit, |
| 11:01 | 8 | which is not binding on Your Honor, has -- has observed |
| 11:01 | 9 | specifically that Germany's legal system follows |
| 11:01 | 10 | American notions of due process. And so whether or not |
| 11:01 | 11 | there's a right to a jury trial in Germany, there are |
| 11:01 | 12 | sufficient procedural protections in Germany that |
| 11:01 | 13 | ensure everyone has a right to a fair trial there. |
| 11:01 | 14 | THE COURT: Well, just so -- and, again, |
| 11:01 | 15 | just so everyone knows, I'm lucky to have gotten to |
| 11:01 | 16 | attend and speak at the Sedona conference where these |
| 11:02 | 17 | issues are discussed at length and I've actually gotten |
| 11:02 | 18 | to sit on panels with some very fine German judges and, |
| 11:02 | 19 | you know, so I have -- I don't have a problem. I don't |
| 11:02 | 20 | have a problem with that either. I mean, I don't in |
| 11:02 | 21 | any way think -- I think a German judge, an Italian |
| 11:02 | 22 | judge, whoever, whatever judge would do the very best |
| 11:02 | 23 | they could to provide whatever due process rights they |
| 11:02 | 24 | have. And so. |
| 11:02 | 25 | MR. PEARSON: Your Honor, I need to -- |

| 11:02 | 1 | I'm just -- excuse me while I find a slide that I'm... |
| 11:02 | 2 | THE COURT:  You're never -- if you're |
| 11:02 | 3 | going past slides, you're never in trouble with me for |
| 11:02 | 4 | skipping over slides.  And so. |
| 11:02 | 5 | MR. PEARSON:  Another reason that the |
| 11:02 | 6 | order of operations I think is highly relevant is under |
| 11:02 | 7 | controlling Fifth Circuit law, you know, State versus |
| 11:03 | 8 | Biden, which is BMW's main complaint is that there is |
| 11:03 | 9 | duplicative and ridiculous litigation because now |
| 11:03 | 10 | there's two lawsuits over the same thing in two places. |
| 11:03 | 11 | But BMW in complaining about having two lawsuits is the |
| 11:03 | 12 | party that created the second lawsuit.  And the law is |
| 11:03 | 13 | clear that in order to obtain equitable relief, you |
| 11:03 | 14 | cannot have caused the harm from which you seek relief. |
| 11:03 | 15 | And I think that is a very important thing that needs |
| 11:03 | 16 | to be, you know, observed. |
| 11:03 | 17 | Further, with respect to notions of |
| 11:03 | 18 | comity, it is true that sometimes the Fifth Circuit |
| 11:03 | 19 | considers comity not as strongly as other circuits, but |
| 11:03 | 20 | there is no doubt that comity is still a very important |
| 11:04 | 21 | consideration in the Fifth Circuit law, especially |
| 11:04 | 22 | under Karaha Bodas which is cited in my slides and in |
| 11:04 | 23 | my papers. |
| 11:04 | 24 | THE COURT:  I think the point that |
| 11:04 | 25 | counsel made with regard to comity that I care about |

| 11:04 | 1 | is, is there ever a situation where -- comity or |
| 11:04 | 2 | comity.  I'm not sure how to pronounce it frankly.  But |
| 11:04 | 3 | how -- which -- however you say comity.  Is there |
| 11:04 | 4 | ever -- is there a case that's held or do you believe |
| 11:04 | 5 | there's a situation where comity would overcome a |
| 11:04 | 6 | jurisdictional, if you follow me.  If I think there's |
| 11:04 | 7 | no jurisdiction for the German court to be maintaining |
| 11:04 | 8 | this suit at all, what role, if any, does comity play? |
| 11:04 | 9 | MR. PEARSON:  Well, comity has a huge |
| 11:04 | 10 | role to play in that situation because the highest |
| 11:04 | 11 | court in the EU in the en banc panel of 15 judges said |
| 11:04 | 12 | the opposite.  And so whenever a U.S. district court is |
| 11:05 | 13 | going to issue a ruling that effectively attempts to |
| 11:05 | 14 | overrule another high international body of law, that's |
| 11:05 | 15 | when comity considerations come in and that's what |
| 11:05 | 16 | Karaha Bodas teaches that comity -- in the Fifth |
| 11:05 | 17 | Circuit comity is very important when it implicates |
| 11:05 | 18 | public international issues.  And -- |
| 11:05 | 19 | THE COURT:  Got it. |
| 11:05 | 20 | MR. PEARSON:  And so that's where we're |
| 11:05 | 21 | at there. |
| 11:05 | 22 | THE COURT:  Okay. |
| 11:05 | 23 | MR. PEARSON:  Your Honor, you know, |
| 11:05 | 24 | indicated that this is a unique situation.  And that's |
| 11:05 | 25 | true.  But it -- but it is worth observing that if Your |

| | | |
|---|---|---|
| 11:05 | 1 | Honor grants an anti-suit injunction against an earlier |
| 11:05 | 2 | filed case, as far as we can tell and as far as BMW |
| 11:05 | 3 | papers can tell, that has never happened before.  That |
| 11:05 | 4 | will be a very unusual situation that you won't be |
| 11:05 | 5 | standing in good stead with your brethren on that.  You |
| 11:06 | 6 | will be the first to do that, and we think that's a |
| 11:06 | 7 | reason to consider not doing it. |
| 11:06 | 8 | THE COURT:  Well, the reason -- but in |
| 11:06 | 9 | fairness, it would be a first in a case where your |
| 11:06 | 10 | decision or Onesta's decision to file in Germany |
| 11:06 | 11 | asserting United States patents is a first as well. |
| 11:06 | 12 | MR. PEARSON:  I understand, Your Honor. |
| 11:06 | 13 | THE COURT:  Okay. |
| 11:06 | 14 | MR. PEARSON:  I just wanted to highlight |
| 11:06 | 15 | that to the Court. |
| 11:06 | 16 | I think also it's worth observing that |
| 11:06 | 17 | U.S. law is clear and has been for decades that it's |
| 11:06 | 18 | permissible for foreign courts to determine issues of |
| 11:06 | 19 | U.S. copyright infringement.  That is well settled. |
| 11:06 | 20 | And so if we create an alternate rule for patents that |
| 11:06 | 21 | patents are a type of IP that should be treated |
| 11:06 | 22 | differently, that, you know, of course risks running |
| 11:07 | 23 | afoul of the Supreme Court's general rule of no special |
| 11:07 | 24 | rules for patent cases.  And there really is no reason |
| 11:07 | 25 | to treat copyrights and patents differently. |

| | | |
|---|---|---|
| 11:07 | 1 | In reply BMW tried to think of reasons to |
| 11:07 | 2 | treat copyrights and patents differently, and all they |
| 11:07 | 3 | came up with was patents have special venue rules and |
| 11:07 | 4 | they pointed to 28 USC 1400.  And of course 28 USC 1400 |
| 11:07 | 5 | equally applies to copyrights. |
| 11:07 | 6 | So I think it's very important that there |
| 11:07 | 7 | are other types of IP that are already being litigated |
| 11:07 | 8 | overseas.  And we submit -- regardless of whether |
| 11:07 | 9 | there's a right to a jury trial in Singapore, right, |
| 11:07 | 10 | but that's fine.  And so I think, you know, it's our |
| 11:07 | 11 | position and we submit that patents should be treated |
| 11:07 | 12 | the same way. |
| 11:07 | 13 | One thing that counsel said that I'd be |
| 11:08 | 14 | remiss to not mention is he said in Germany there's no |
| 11:08 | 15 | eBay, and he has this whole theory that we filed a |
| 11:08 | 16 | lawsuit in Germany just so we could get an injunction |
| 11:08 | 17 | that we wouldn't be entitled to here, and that's just |
| 11:08 | 18 | not true.  The German court will determine all issues |
| 11:08 | 19 | under U.S. law, including our request for an injunction |
| 11:08 | 20 | which will be decided under eBay and surrounding case |
| 11:08 | 21 | law.  So the idea that we gained some sort of |
| 11:08 | 22 | procedural advantage in that regard by being in Germany |
| 11:08 | 23 | is just absolutely incorrect, and I -- |
| 11:08 | 24 | THE COURT:  I tried to make clear during |
| 11:08 | 25 | his argument I'm not very moved by the argument that |

11:08    1    there is some strategery involved in this.  I mean,

11:08    2    good lawyers have reasons to do whatever they do and

11:08    3    file however they did to gain whatever advantage they

11:08    4    think they can get.  And here that's -- I mean, that's

11:08    5    why y'all filed it there.  There's nothing wrong with

11:08    6    that at all.  I admire lawyers representing their

11:08    7    clients and doing whatever they think is best.  So

11:09    8    I'm -- if that is an advantage, it's an advantage that

11:09    9    I don't -- you know, that I don't -- it's -- I'm

11:09    10   unmoved by it because it's not the issue I'm concerned

11:09    11   with.

11:09    12              MR. PEARSON:  Well, we certainly meant no

11:09    13   disrespect to Your Honor or the U.S. courts in general

11:09    14   by filing in Germany.

11:09    15              THE COURT:  I didn't take any.

11:09    16              MR. PEARSON:  But it is a fact, Your

11:09    17   Honor, that in general German lawsuits go much quicker

11:09    18   and that patent litigation is very expensive and so --

11:09    19              THE COURT:  Again, I'm -- yes.  I'm very

11:09    20   familiar with that.

11:09    21              MR. PEARSON:  The sooner that a plaintiff

11:09    22   can get to a ruling, you know, in general, the better.

11:09    23   Even counsel for -- opposing counsel, you know,

11:09    24   observed after filing his AASI request and claiming

11:09    25   that the U.S. would be more efficient for this dispute,

| 11:09 | 1 | you know, wrote an article claiming the opposite, that |

11:09   1   you know, wrote an article claiming the opposite, that

11:09   2   Germany is actually the place where, you know,

11:09   3   efficiency is held the most.

11:09   4              To the extent --

11:09   5              THE COURT:  I think you can look at my

11:10   6   entire seven and a half years and know that I'm in

11:10   7   complete agreement that being as efficient as possible

11:10   8   and, again, I understand that side of the benefit of

11:10   9   being in a German court for sure.

11:10   10             MR. PEARSON:  So before I close, we

11:10   11  stated in the papers that, you know, of course we

11:10   12  believe that there's no Unterweser threats that BMW

11:10   13  actually identified.  And so the best move is to not

11:10   14  interfere with the German court because if you

11:10   15  interfere with the German court, there's no difference

11:10   16  between addressing an injunction to the parties and

11:10   17  addressing it to the foreign court itself.  That's what

11:10   18  the Compagnie case said that BMW brought to your

11:10   19  attention in reply.

11:10   20             Again, to the extent there's any question

11:10   21  about the meaning of Electrolux, we believe the German

11:10   22  court should be the one to decide it first.

11:11   23             BMW argues that we're trying to close the

11:11   24  courthouse door on them.  That's absolutely not true.

11:11   25  We believe that this DJ action should go forward in the

11:11  1   ordinary course and the German action should go forward

11:11  2   in the ordinary course, and that's what the Supreme

11:11  3   Court has said should happen in a situation when

11:11  4   there's parallel proceedings.  That was again -- those

11:11  5   cases are collected in the Compagnie case that BMW

11:11  6   cited in their reply.

11:11  7              And again, Your Honor, I just -- I must

11:11  8   stress that there actually is no threat to your

11:11  9   jurisdiction in this DJ action.  No matter what happens

11:11  10  in Germany, it has no effect on your ability to enter a

11:11  11  judgment and proceed with this case that is in front of

11:11  12  Your Honor.  So I think that is the key test for

11:11  13  whether an anti-suit injunction should be granted,

11:11  14  whether there's -- whether a foreign lawsuit is going

11:11  15  to interfere with your case.  And because the foreign

11:11  16  lawsuit in no way will interfere with your ability to

11:11  17  rule on this DJ, we think that an anti-suit injunction

11:12  18  would be inappropriate especially under considerations

11:12  19  of comity where ruling in the opposite would

11:12  20  effectively attempt to, as a policy matter, overrule

11:12  21  Electrolux.

11:12  22              And, again, like I said before, we think

11:12  23  that it is better for America if its friends across the

11:12  24  ocean attempt to prevent its own citizens from doing

11:12  25  bad things in America.

11:12    1            So unless you have any further questions,

11:12    2    Your Honor, I think I covered the points that opposing

11:12    3    counsel covered.  I'm happy to answer any other

11:12    4    questions.

11:12    5            THE COURT:  No.  And let me just say,

11:12    6    I've given you a pretty hard time but hopefully not in

11:12    7    an offensive way.  And I think you have acquitted

11:12    8    yourself extremely well in defending your positions.

11:13    9    I've really appreciated your arguments today.

11:13   10            In response, the only thing I really care

11:13   11    to hear a response on, I think I need a response on is

11:13   12    what counsel just closed with which is the contention

11:13   13    that there's nothing in the -- that my decision about

11:13   14    whether or not to grant an injunction depends on

11:13   15    whether or not I believe that there's anything

11:13   16    happening in the German suit which would prevent me

11:13   17    from moving forward in my case.  And I think I'd like

11:13   18    to hear argument on that, but I don't think I need to

11:13   19    hear argument on much else.

11:13   20            MR. LAVENUE:  Thank you, Your Honor.

11:13   21            So as far as whether or not there's

11:13   22    anything in Germany that would prevent you, the answer

11:13   23    is no.  There's nothing that would happen in Germany

11:13   24    that would prevent you from going forward other than

11:13   25    the inconsistency that would result from what Germany

| | | |
|---|---|---|
| 11:14 | 1 | is doing applying U.S. law and what you would be doing |
| 11:14 | 2 | doing exactly the same thing. |
| 11:14 | 3 | THE COURT:  Got it.  Okay.  And I don't |
| 11:14 | 4 | want to -- I mean, you've got clients and if there's |
| 11:14 | 5 | anything you just are desperately burning that you feel |
| 11:14 | 6 | like you have to tell me, I've certainly got time to |
| 11:14 | 7 | take that up.  If there's any points you just -- I did |
| 11:14 | 8 | a CLE the other night where the main complaint of the |
| 11:14 | 9 | lawyers was judges that keep interrupting them and |
| 11:14 | 10 | won't let them argue things.  And so I'm happy to have |
| 11:14 | 11 | you say -- and if opposing counsel wants to say |
| 11:14 | 12 | anything else after you're done, I'm happy to hear that |
| 11:14 | 13 | too.  So if there's any argument you really feel like I |
| 11:14 | 14 | need to have you make, please feel free to do it. |
| 11:14 | 15 | MR. LAVENUE:  Thank you, Your Honor. |
| 11:14 | 16 | I just -- I think I can wrap it up in |
| 11:14 | 17 | 60 seconds my final comments. |
| 11:14 | 18 | THE COURT:  Okay. |
| 11:14 | 19 | MR. LAVENUE:  Counsel for Onesta notes or |
| 11:14 | 20 | argues that if you protect U.S. jurisdiction by |
| 11:15 | 21 | granting an anti-suit injunction, that somehow that |
| 11:15 | 22 | would be either against your brethren in the U.S. based |
| 11:15 | 23 | upon Ninth Circuit comity or based upon the judges in |
| 11:15 | 24 | Europe that have -- that he argues has ruled in the |
| 11:15 | 25 | Electrolux case.  I heard your comments that, you know, |

| 11:15 | 1 | you're willing to accept Circuit split differences. |
| 11:15 | 2 | That's fine.  And I agree completely. |
| 11:15 | 3 | But as far as the Electrolux case, the |
| 11:15 | 4 | Electrolux case did not hold that U.S. patents can be |
| 11:15 | 5 | asserted in Germany.  The Electrolux case was based |
| 11:15 | 6 | upon the assertion of EU patents and under the EPC and |
| 11:15 | 7 | involving countries that were in the EU or had formerly |
| 11:15 | 8 | been in the EU, not the United States.  There's |
| 11:15 | 9 | absolutely no mention of the assertion of U.S. patents. |
| 11:15 | 10 | And then, finally, counsel for Onesta |
| 11:15 | 11 | notes that he believes that it would harm America |
| 11:15 | 12 | somehow if the Electrolux case were not allowed to |
| 11:15 | 13 | stand.  I believe that it is the exact opposite.  I |
| 11:15 | 14 | believe that it is the exclusivity of the U.S. |
| 11:16 | 15 | enforcement by U.S. courts of U.S. patents that |
| 11:16 | 16 | strengthens the U.S. patent system, and that is what we |
| 11:16 | 17 | believe Your Honor should support, maintain and enforce |
| 11:16 | 18 | through an anti-suit injunction. |
| 11:16 | 19 | Thank you, Your Honor. |
| 11:16 | 20 | THE COURT:  And anything else for Onesta? |
| 11:16 | 21 | MR. PEARSON:  Yes, Your Honor. |
| 11:16 | 22 | We've said why we think an anti-suit |
| 11:16 | 23 | injunction would be inappropriate. |
| 11:16 | 24 | One final observation I believe's a |
| 11:16 | 25 | little bit delicate that I'm going to try to say |

| 11:16 | 1 | without any offense to Your Honor. |
| 11:16 | 2 | THE COURT:  No.  You can't offend me. |
| 11:16 | 3 | MR. PEARSON:  Is that even if, you know, |
| 11:16 | 4 | Your Honor believes that patents should be litigated in |
| 11:16 | 5 | the U.S. exclusively, I think as a practical matter |
| 11:16 | 6 | what is going to happen if Your Honor issues an |
| 11:16 | 7 | anti-suit injunction in this case against Onesta is |
| 11:16 | 8 | that in the future when other plaintiffs read |
| 11:17 | 9 | Electrolux the same way that Onesta has, what they will |
| 11:17 | 10 | do is file their complaint in Germany and |
| 11:17 | 11 | simultaneously do what BMW did in this case and |
| 11:17 | 12 | simultaneously seek an anti-suit injunction in Germany |
| 11:17 | 13 | to prevent a U.S. court from interfering with the |
| 11:17 | 14 | German action as Your Honor might do here if the thing |
| 11:17 | 15 | is granted.  And so I don't know that that's also |
| 11:17 | 16 | great.  I don't want a situation where everyone's just |
| 11:17 | 17 | filing anti-suit injunctions against each other.  I |
| 11:17 | 18 | think the Supreme Court says that cases can proceed in |
| 11:17 | 19 | parallel, additive jurisdictions are good. |
| 11:17 | 20 | And then also, Your Honor, I don't know |
| 11:17 | 21 | the details of it, but to the extent Your Honor does |
| 11:17 | 22 | wish to enter an anti-suit injunction of some sort, |
| 11:17 | 23 | especially if you're considering the drastic relief |
| 11:17 | 24 | that BMW requested of forcing us to terminate our |
| 11:17 | 25 | German action that Your Honor at least considers issues |

| | | |
|---|---|---|
| 11:17 | 1 | of stay pending appeal so that we have some clarity on |
| 11:18 | 2 | timing and that we have a chance to -- you know, for |
| 11:18 | 3 | the client to pursue its rights under the rules. |
| 11:18 | 4 | THE COURT:  So if I were to grant the |
| 11:18 | 5 | injunction, whatever the injunction is, and stay it, |
| 11:18 | 6 | what -- here's my -- this is an area I have no idea |
| 11:18 | 7 | what -- even though, like I said, I've listened to a |
| 11:18 | 8 | lot of judges talk about this.  If I were to stay my |
| 11:18 | 9 | injunction, wouldn't -- while you appeal my injunction, |
| 11:18 | 10 | how does that help the plaintiff?  Not that you're |
| 11:18 | 11 | trying to help the plaintiff, but if, as you've noted, |
| 11:18 | 12 | the German courts move very quickly.  You're continuing |
| 11:18 | 13 | to get to move forward.  I don't understand how my -- I |
| 11:18 | 14 | don't understand the equity in staying my injunction. |
| 11:18 | 15 | If you'd explain that. |
| 11:18 | 16 | MR. PEARSON:  Well, I think the equity is |
| 11:19 | 17 | that there's no problem in having two cases proceed. |
| 11:19 | 18 | Having two cases was BMW's request, and -- |
| 11:19 | 19 | THE COURT:  Well, and I interrupted you. |
| 11:19 | 20 | I'm sorry.  But what we know is what we -- who is it |
| 11:19 | 21 | that said there are known knowns and unknowns, all that |
| 11:19 | 22 | stuff.  What we know is if I stay my decision and you |
| 11:19 | 23 | proceed in Germany, it's going to be moving quickly. |
| 11:19 | 24 | What we don't know is how long it would take for the |
| 11:19 | 25 | Court to decide about my injunction.  And so it seems |

| | | |
|---|---|---|
| 11:19 | 1 | to me there's no guarantee that -- for example, that |
| 11:19 | 2 | the German case wouldn't be finished possibly before a |
| 11:19 | 3 | Circuit would address my injunction.  I mean, we just |
| 11:19 | 4 | don't know, I don't think -- and maybe I'm wrong.  If |
| 11:19 | 5 | you think I'm wrong, let me know.  But I think me |
| 11:19 | 6 | staying my injunction would allow you potentially to |
| 11:20 | 7 | completely get out of the impact of my injunction.  Am |
| 11:20 | 8 | I wrong?  I mean, I don't know enough about -- I'm |
| 11:20 | 9 | thinking -- you're welcome to -- but I think it moves |
| 11:20 | 10 | quickly enough in Germany, and we -- there's enough of |
| 11:20 | 11 | an unknown in the Circuit timing that that could |
| 11:20 | 12 | essentially eviscerate the injunction, couldn't it? |
| 11:20 | 13 | MR. PEARSON:  Well, I agree with Your |
| 11:20 | 14 | Honor's recitation of known/unknowns and agree that we |
| 11:20 | 15 | don't know.  But, you know, that's our request, Your |
| 11:20 | 16 | Honor.  We think the law is heavily on our side and |
| 11:20 | 17 | that's just the request that I wanted to note for the |
| 11:20 | 18 | record. |
| 11:20 | 19 | THE COURT:  No.  I got it.  Again, I -- I |
| 11:20 | 20 | mean, this is a fascinating case and I'm -- you know, |
| 11:20 | 21 | I'm -- you know, one of the great things about this job |
| 11:20 | 22 | is getting, as I've said a million times and you've |
| 11:20 | 23 | heard me say about you and others, the quality of the |
| 11:20 | 24 | bar that handles these type cases is exceptional |
| 11:20 | 25 | 95 percent of the time.  That's why I enjoy patent |

| 11:21 | 1 | cases so much is having the quality of lawyers that I |
| 11:21 | 2 | get routinely.  And so I understand why. |
| 11:21 | 3 | If I were in your shoes, I would be |
| 11:21 | 4 | saying, if there's an injunction, I'd like you to stay |
| 11:21 | 5 | it too.  So that's why I'm saying it's hard to offend |
| 11:21 | 6 | me if I'm thinking that's what I would be asking for |
| 11:21 | 7 | too.  I'm just trying to figure out down -- the |
| 11:21 | 8 | ramifications. |
| 11:21 | 9 | MR. PEARSON:  Yes, Your Honor.  I |
| 11:21 | 10 | understand. |
| 11:21 | 11 | THE COURT:  Anything else from BMW? |
| 11:21 | 12 | MR. LAVENUE:  Nothing further, Your |
| 11:21 | 13 | Honor.  We just agree with all the points that you made |
| 11:21 | 14 | as to the urgency and necessity of the anti-suit |
| 11:21 | 15 | injunction given the German proceeding and the upcoming |
| 11:21 | 16 | deadlines that we have in February. |
| 11:21 | 17 | Thank you. |
| 11:21 | 18 | THE COURT:  And anything else from |
| 11:21 | 19 | Onesta? |
| 11:21 | 20 | MR. PEARSON:  No, Your Honor. |
| 11:21 | 21 | But with respect to BMW's upcoming |
| 11:21 | 22 | deadlines in Germany, as I understand what BMW's |
| 11:22 | 23 | requesting that we don't take further action in |
| 11:22 | 24 | Germany, that's -- if we take no further action in |
| 11:22 | 25 | Germany, that's not going to change their deadlines in |

| | | |
|---|---|---|
| 11:22 | 1 | February.  So I just wanted to observe that for the |
| 11:22 | 2 | Court as well. |
| 11:22 | 3 | THE COURT:  Okay.  Okay.  Anything else? |
| 11:22 | 4 | MR. PEARSON:  No, Your Honor. |
| 11:22 | 5 | MR. LAVENUE:  Oh, sorry.  Nothing from my |
| 11:22 | 6 | side, Your Honor. |
| 11:22 | 7 | The only response to that is that if |
| 11:22 | 8 | there isn't a grant of the anti-suit injunction, then |
| 11:22 | 9 | that would resolve the issue in Germany as we all know. |
| 11:22 | 10 | So that's all.  Thank you, Your Honor. |
| 11:22 | 11 | THE COURT:  Anything else? |
| 11:22 | 12 | MR. PEARSON:  Nothing further, Your |
| | 13 | Honor. |
| 11:22 | 14 | It was a pleasure to appear before you |
| 11:22 | 15 | today and thank you for giving me a hard time. |
| 11:22 | 16 | (Laughter.) |
| 11:22 | 17 | THE COURT:  I'll be back in -- well, I |
| 11:22 | 18 | didn't -- there are other lawyers who would say I've |
| 11:22 | 19 | given them a lot harder time, but usually -- |
| 11:22 | 20 | MR. PEARSON:  I'm sure that's right. |
| 11:22 | 21 | THE COURT:  It's usually because they |
| 11:22 | 22 | were much less competent. |
| 11:22 | 23 | I'll be back in a few seconds. |
| 11:22 | 24 | MR. PEARSON:  Thank you, Your Honor. |
| 11:23 | 25 | MR. LAVENUE:  Thank you, Your Honor. |

| | | |
|---|---|---|
| 11:23 | 1 | (Pause in proceedings.) |
| 11:31 | 2 | THE COURT: Okay. If we could go back on |
| 11:31 | 3 | the record. |
| 11:31 | 4 | The Court is going to grant BMW's motion |
| 11:31 | 5 | for preliminary injunction. |
| 11:31 | 6 | We'll get a written order out as quickly |
| 11:31 | 7 | as we can. I'm not going to stay it. |
| 11:32 | 8 | And specifically to be clear today, |
| 11:32 | 9 | Onesta is ordered to terminate the German case as to |
| 11:32 | 10 | the United States patents. |
| 11:32 | 11 | Is there anything else we need to take |
| 11:32 | 12 | up? |
| 11:32 | 13 | MR. LAVENUE: Nothing from us, Your |
| 11:32 | 14 | Honor. Thank you. |
| 11:32 | 15 | MR. PEARSON: Your Honor, as a |
| 11:32 | 16 | housekeeping matter, we were intending to file our |
| 11:32 | 17 | slides that we used at this hearing. Is that okay with |
| 11:32 | 18 | Your Honor? |
| 11:32 | 19 | THE COURT: I don't know how to prevent |
| 11:32 | 20 | it. So sure. In fact, I would -- I'd prefer -- what I |
| 11:32 | 21 | don't know how -- and probably Mr. Siegmund does know |
| 11:32 | 22 | how. I just -- I don't -- I've never had to file |
| 11:32 | 23 | slides. So I would assume however you want to do it. |
| 11:32 | 24 | I certainly think they should be part of the record as |
| 11:32 | 25 | it's taken up. However -- yes. I don't know how you |

| 11:32 | 1 | do it, but that would be actually fine with me. |

| 11:33 | 2 |                    MR. PEARSON:  Thank you, Your Honor. |

| 11:33 | 3 |                    And I hesitate to ask this question, but |

11:33  4  I'm sure the German counsel will want me to.  Is your

11:33  5  further written order going to contain a deadline by

11:33  6  which we are ordered to terminate or.

11:33  7                    THE COURT:  I'm not -- I'm -- I'm

11:33  8  ordering you to terminate now.  So if I look confused,

11:33  9  I'm not sure what you're asking.  I don't understand

11:33  10  why you think there'd be a gap between me ordering you

11:33  11  to terminate now and when you'll have to terminate.  So

11:33  12  maybe you can clarify.

11:33  13                    MR. PEARSON:  Well, I believe my client

11:33  14  will want to appeal this decision and so --

11:33  15                    THE COURT:  Oh, I --

11:33  16                    MR. PEARSON:  I didn't want to offend

11:33  17  Your Honor by filing our notice of appeal and not

11:34  18  immediately terminating the action or in some way like

11:34  19  if we don't terminate in the next five minutes that

11:34  20  Your Honor would be upset with us.

11:34  21                    THE COURT:  I think you need to go

11:34  22  through with your German counsel and find out the most

11:34  23  appropriate way to follow my direction to terminate.

11:34  24  And so there may be things that go on in a German

11:34  25  court.  If I say with all reasonable dispatch, does

| 11:34 | 1 | that do it for you?  I mean, I'm not expecting -- there |

11:34  1   that do it for you?  I mean, I'm not expecting -- there

11:34  2   may be things involved I'm unaware of in how it will

11:34  3   work in Germany that -- and if your German counsel is

11:34  4   telling you that, I won't be offended by you taking the

11:34  5   steps you need to to do it in a way that is appropriate

11:34  6   in Germany.

11:34  7          MR. PEARSON:  Thank you, Your Honor.  I

11:34  8   understand.  I think the issue is the sort of interplay

11:34  9   between termination and then the appellate rights in

11:35  10  the U.S. and I just want to make sure that -- I

11:35  11  understand where Your Honor's coming from and we will

11:35  12  do our best and I just want you to understand that

11:35  13  we're going to do our best to, you know, follow your

11:35  14  ruling within, you know, the scope of our appellate

11:35  15  rights as well.

11:35  16          THE COURT:  Okay.  There's a little bit

11:35  17  of hedging in there, but I probably would have hedged

11:35  18  in the same way if I were in your shoes.  So.

11:35  19          And I'm sure if BMW's counsel is unhappy

11:35  20  with the dispatch you're moving, we'll probably hear

11:35  21  about that as well.  So.

11:35  22          And I'll just take it up then.

11:35  23          MR. CASSADY:  Your Honor, if I -- this is

11:35  24  Jason Cassady.  And I don't want to break the one riot,

11:35  25  one ranger rule.

11:35  1                THE COURT:  I don't have that rule.

11:35  2                MR. CASSADY:  Okay.  Thank you, Your

11:35  3   Honor.

11:35  4                So look.  The only thing I would say here

11:35  5   and I would ask Your Honor for this and -- but I've

11:35  6   known your Court for a long time.  So I hope that you

11:35  7   take this in the best way I mean it.

11:35  8                In this situation of you granting this

11:35  9   particular injunction, you are destroying and saying

11:36  10  it's immediate and refusing to stay.  You are

11:36  11  destroying the action in Germany.  And I understand you

11:36  12  can agree -- you can think that's the right answer,

11:36  13  Your Honor, but you're actually to a certain degree

11:36  14  destroying our ability to adjudicate the issue.  So I

11:36  15  think -- what I would ask respectfully, Your Honor, is

11:36  16  that you at least allow us to put, you know, the proper

11:36  17  notice in to the Federal Circuit that would allow us to

11:36  18  be in a situation where should the Court decide that we

11:36  19  should not shut that action down, that that would be

11:36  20  irreparable harm that we're being shut down in Germany

11:36  21  in a way we can't get it back with such immediacy of

11:36  22  Your Honor's order that that -- that would -- that

11:36  23  would both destroy both places.  We'd be in a situation

11:36  24  where the German action --

11:36  25                THE COURT:  Well, so let me ask you this:

| | | |
|---|---|---|
| 11:36 | 1 | And so what -- what I'm not following that you're |
| 11:36 | 2 | saying is I don't know that this is a decision that's |
| 11:37 | 3 | mandamusable.  I don't know if -- are you thinking it |
| 11:37 | 4 | is is?  Because -- |
| 11:37 | 5 | MR. CASSADY:  Yes, Your Honor. |
| 11:37 | 6 | MR. PEARSON:  It's not mandamusable, Your |
| 11:37 | 7 | Honor.  It's just there's an automatic right to appeal |
| 11:37 | 8 | a permanent injunction. |
| 11:37 | 9 | THE COURT:  And that's my problem.  So if |
| 11:37 | 10 | this were mandamusable -- in other words, if there was |
| 11:37 | 11 | a way to get some immediate reaction from the Circuit, |
| 11:37 | 12 | then I would feel one way, but unless you all are |
| 11:37 | 13 | telling me differently -- you have -- obviously have |
| 11:37 | 14 | the right to appeal my decision, but there's no |
| 11:37 | 15 | boundary on when the Federal Circuit has to take it up, |
| 11:37 | 16 | is there?  I mean, it's not -- is there such a thing as |
| 11:37 | 17 | an emergency appeal in this situation because I'm |
| 11:38 | 18 | entering -- I literally don't know what -- but I don't |
| 11:38 | 19 | think there is.  I think that the concern I voiced |
| 11:38 | 20 | earlier which is if I stay my decision to enjoin, there |
| 11:38 | 21 | is no telling when the Circuit might review it. |
| 11:38 | 22 | MR. PEARSON:  My co-counsel's informing |
| 11:38 | 23 | me that we at least have the option and are happy to do |
| 11:38 | 24 | this to request an expedited treatment of the appeal. |
| 11:38 | 25 | But as I'm speaking right now, I don't know all the |

| | | |
|---|---|---|
| 11:38 | 1 | boundaries of that or whether they're required to grant |
| 11:38 | 2 | it or that sort of thing. |
| 11:38 | 3 | THE COURT:  Yeah.  And I can't believe |
| 11:38 | 4 | any Circuit would say they are bound, you know, to do |
| 11:38 | 5 | anything is just my guess. |
| 11:38 | 6 | MR. PEARSON:  Yes, Your Honor. |
| 11:38 | 7 | MR. CASSADY:  But, Your Honor, my main |
| 11:38 | 8 | point to you is that I don't want to be in the |
| 11:38 | 9 | situation where like I'm trying to find in the next 24, |
| 11:38 | 10 | 48 hours my ability to on an emergency basis make a |
| 11:38 | 11 | request to the Federal Circuit.  But in the meantime -- |
| 11:38 | 12 | THE COURT:  I'm giving you that window. |
| 11:39 | 13 | MR. CASSADY:  Okay.  Okay.  Thank you, |
| 11:39 | 14 | Your Honor. |
| 11:39 | 15 | THE COURT:  No.  I'm -- |
| 11:39 | 16 | MR. CASSADY:  I respect this Court too |
| 11:39 | 17 | much to be in a situation where I'm not listening to |
| 11:39 | 18 | what you're telling me.  That's why I'm asking you. |
| 11:39 | 19 | THE COURT:  No.  I'm giving you the |
| 11:39 | 20 | window on your side to find out if there's a way to |
| 11:39 | 21 | accelerate an appeal on this which, you know, I would |
| 11:39 | 22 | certainly take -- consider.  And I'm also having |
| 11:39 | 23 | zero -- I have probably more understanding of antitrust |
| 11:39 | 24 | law than I do German law.  I have no understanding of |
| 11:39 | 25 | antitrust law.  If your German counsel is saying, look. |

11:39  1    We can't just -- I'm making this up -- mail the German

11:39  2    court and say, this is what is happening.  There are

11:39  3    steps you have to take in the German court.  You know,

11:39  4    my injunction -- I want to be fair obviously to Onesta

11:39  5    as well.  And so, you know, again, I'm going to allow

11:39  6    counsel for BMW to decide as you are -- what the

11:39  7    reasonable amount of time is before they complain that

11:40  8    you haven't terminated.  And if I were you, I would be

11:40  9    in communication with BMW's counsel and advising them

11:40  10   what it is you're doing to try and protect your

11:40  11   client's rights, which are important to me as well, and

11:40  12   hopefully -- my sense of BMW's counsel is very

11:40  13   reasonable and, you know, if at some point he feels

11:40  14   like I need to say, okay.  Now's the moment when it's

11:40  15   imposed, that's fine with me.

11:40  16             MR. PEARSON:  I understand.

11:40  17             THE COURT:  And I'm happy for BMW's

11:40  18   counsel if you think there's some -- if that's not an

11:40  19   appropriate manner to take.

11:40  20             MR. LAVENUE:  Your Honor, no objection

11:40  21   from BMW.  I would just note that I'm in consultation

11:40  22   with German counsel for BMW now, and effectively what

11:40  23   your order would result in would be a dismissal without

11:41  24   prejudice analog.  Like if there were a case before you

11:41  25   and the case were dismissed by the party without

11:41  1    prejudice, they could always refile.  So counsel for

11:41  2    Onesta, they can dismiss the German case.  They can go

11:41  3    to the Federal Circuit and see how it goes.  If they

11:41  4    win at the Federal Circuit, then they can just refile

11:41  5    the German case.  So there's no downside to them to

11:41  6    following your order on the dismissal under the ASI.

11:41  7                THE COURT:  Response?

11:41  8                MR. PEARSON:  Yeah.  Respectfully, Your

11:41  9    Honor, that's not true.  At least as I understand the

11:41  10   nature of BMW's sales, they do go back in time, and so

11:41  11   if we are forced to dismiss and then later refile, that

11:41  12   is going to affect Onesta because it is going to, you

11:41  13   know, potentially materially alter the damages window

11:41  14   for which it can recover under 286.

11:41  15               THE COURT:  Yeah.  But to go back for

11:41  16   just a second, you know, one of your arguments was that

11:42  17   there was no loss of a jury trial because damages

11:42  18   aren't being asserted and -- yet -- and so I think what

11:42  19   you just said kind of underscores the reality that at

11:42  20   some point you are going to be seeking damages.  And

11:42  21   frankly -- you know, I'm -- frankly, I'm concerned

11:42  22   about, which I -- just to make clear, allowing a German

11:42  23   court to decide what damages ought to be for a United

11:42  24   States patent.  So that -- I'm less moved by that, but

11:42  25   at any rate, you know, Onesta and counsel are free to

| 11:42 | 1 | move as quickly as possible to figure out what their |
| 11:42 | 2 | rights are both appealing my injunction and also what |
| 11:42 | 3 | it takes to dismiss the case in Germany.  That is my |
| 11:42 | 4 | order, but I'll wait to hear from plaintiffs -- BMW's |
| 11:43 | 5 | counsel if it gets to the point where he thinks I need |
| 11:43 | 6 | to get involved again. |
| 11:43 | 7 | MR. PEARSON:  Thank you, Your Honor. |
| 11:43 | 8 | THE COURT:  Anything else? |
| 11:43 | 9 | MR. LAVENUE:  Nothing from us, Your |
| 11:43 | 10 | Honor.  Thank you. |
| 11:43 | 11 | THE COURT:  Anything from Onesta? |
| 11:43 | 12 | MR. PEARSON:  Nothing further, Your |
| 11:43 | 13 | Honor. |
| 11:43 | 14 | THE COURT:  Okay.  Y'all have a good day. |
| 11:43 | 15 | Take care. |
| 11:43 | 16 | (Hearing adjourned.) |

1    UNITED STATES DISTRICT COURT )

2    WESTERN DISTRICT OF TEXAS      )

3

4

5              I, Kristie M. Davis, Official Court

6    Reporter for the United States District Court, Western

7    District of Texas, do certify that the foregoing is a

8    correct transcript from the record of proceedings in

9    the above-entitled matter.

10             I certify that the transcript fees and

11   format comply with those prescribed by the Court and

12   Judicial Conference of the United States.

13             Certified to by me this 13th day of

14   January 2026.

15

16                        */s/ Kristie M. Davis*
                          KRISTIE M. DAVIS
17                        Official Court Reporter
                          PO Box 20994
18                        Waco, Texas 76702
                          (254) 666-0904
19                        kmdaviscsr@yahoo.com

20

21

22

23

24

25

11:43